# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued April 4, 2014          Decided May 13, 2014

No. 13-5119

COAL RIVER ENERGY, LLC,
APPELLANT

v.

SALLY JEWELL, SECRETARY, U.S. DEPARTMENT OF THE
INTERIOR AND UNITED STATES DEPARTMENT OF THE
INTERIOR,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:11-cv-01648)

———

*Steven H. Becker* argued the cause and filed the briefs for appellant.

*Tara K. Hogan*, Senior Trial Counsel, U.S. Department of Justice, argued the cause for appellees. With her on the brief were *Stuart F. Delery*, Assistant Attorney General, and *Jeanne E. Davidson*, Director.

Before: KAVANAUGH and WILKINS, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SILBERMAN.

SILBERMAN, *Senior Circuit Judge*:  Under the Surface Mining Control and Reclamation Act, operators of coal mines must pay a fee for each ton of coal they produce by mining. The purpose of the fee is to fund the restoration of land damaged by coal mining. A Department of the Interior regulation requires mine operators to pay the reclamation fee when the coal is ultimately sold or used, rather than immediately after the coal is removed from the ground. Appellant, a coal mine operator, sued the Secretary in district court, arguing that the regulation could not be constitutionally applied to coal sold for export because the Export Clause of the Constitution states that "No Tax or Duty shall be laid on Articles exported from any state."  U.S. Const. Art. I, § 9, cl. 5. The district court dismissed the case as untimely. We affirm.

## I.

In 1977, Congress enacted the Reclamation Act, establishing a fee on all coal mined in the United States. The Act set a fee of "28 cents per ton of coal produced by surface coal mining and 12 cents per ton of coal produced by underground mining." 30 U.S.C. § 1232(a). Immediately after the coal is removed from the ground it is impure, mixed with other rocks and dirt. So if the coal were weighed at that moment, it would be impossible to determine exactly how much mass is attributable to coal and how much to other impurities. The Secretary of the Interior, recognizing that problem, promulgated the following rule:

> (a) The operator shall pay a reclamation fee on each ton of coal produced for sale, transfer, or use, including

the products of in situ mining.

(b) The fee shall be determined by the weight and value *at the time of initial bona fide sale, transfer of ownership, or use by the operator.*

30 C.F.R. § 870.12 (emphasis added). Measuring the weight of the coal at the time of sale increases accuracy, as most impurities will likely have been removed. The total weight – and total fee charged – should therefore be less.

A number of coal companies, nevertheless, challenged the regulation – at least with respect to the sales of coal for export. A direct tax on coal exported would violate the little-known Export Clause of the Constitution, which provides that "No Tax or Duty shall be laid on Articles exported from any state." U.S. Const. Art. I, § 9, cl. 5. They sued in the Court of Federal Claims, were initially successful, but lost on appeal in the Federal Circuit. *See Consolidation Coal Co. v. United States*, 528 F.3d 1344, 1348 (Fed. Cir. 2008), *cert. denied* 131 S. Ct. 2990 (2011). The Federal Circuit, relying on the constitutional avoidance canon, interpreted the statutory phrase "coal produced" as referring to coal extracted, and therefore the regulation should be interpreted as a fee imposed on extraction but collected at a later date.

A few months later a newly established coal company, Coal River – which did not participate in the *Consolidation Coal* litigation – filed essentially the same suit, a challenge to the regulation based on the Export Clause, in our district court, seeking ultimately a D. C. Circuit conflict with the Federal Circuit. Appellant relied on our opinion in *Drummond Coal Co. v. Hodel*, 796 F.2d 503 (D.C. Cir. 1986), in which a coal company challenged a different portion of the Secretary's

regulation, which clarified that impurities not removed at the time of sale were included in the weight of the coal on which the fee was imposed. Although we noted that the term "'coal produced'...could reasonably be interpreted to include the entire process of extracting and selling coal...or it could refer solely to the process of extraction," and the government was resting on the former interpretation, our key observation was that "nowhere does the [Act] specify what elements comprise a taxable piece of coal." *Id.* at 505. In that case, although we sanctioned pursuant to *Chevron* the Department's interpretation that "coal produced" was legitimately interpreted as the final step at sale or use, we were not faced with the constitutional argument presented in *Consolidation Coal*, which led the Federal Circuit to conclude the constitutional avoidance canon trumped the Department's prior interpretation. Therefore, appellant's argument that there is a conflict between the two circuits is somewhat strained.

But as will become apparent, any supposed conflict with the Federal Circuit is not really relevant because we agree with the district court that appellant's challenge to the rule comes too late to be entertained. Section 1276 of the Reclamation Act explicitly provides – similar to a number of statutes – that all challenges to regulations promulgated under the Act must be brought within sixty days of a rule's promulgation. 30 U.S.C. § 1276(a)(1).

## II.

Before considering the scope of limitations language of § 1276, we need to deal with Coal River's argument that § 1276 does not even apply to its suit, which relies on the Constitution and the Administrative Procedure Act, because it is not one challenging the regulation on its face. As we understand Coal River's contention, it is that § 1276 only covers "facial" challenges to the regulation, whereas appellant's claim – based

as it is only on the regulation's impact on sales for export, not all sales or uses of coal – should be thought of as an as-applied challenge. Although Coal River's case is admittedly directed to only certain transactions covered by the regulation, it is still a challenge to the rule as it is written, and not simply as it might later be interpreted or applied. As such, it is certainly a challenge to an "action by the Secretary promulgating national rules or regulations," and therefore § 1276 applies.[1]

We turn now to the timeliness of the claim under the Reclamation Act. To be sure, § 1276 provides a safety valve; a challenge may be brought "after such date if the petition is based solely on grounds arising after the sixtieth day." Coal River argues that, as a new coal company that was not in existence at the time the regulation was promulgated, it can take advantage of the safety valve provision. The government, without explicitly conceding that such a circumstance falls within the regulation's exception, does not contest this interpretation. But it contends that the district court was correct in determining that, at most, Coal River had sixty days after the fee was first imposed on it.

Coal River argues that imposing a sixty-day limitation on an after-arising claim is unauthorized by the statute. After all, it claims – and this is quite true – the statute is conspicuously silent on such a limitation. Conspicuous because the preceding clause imposes just that limitation on the normal claim. Moreover, Coal

---

[1] Because Coal River's challenge clearly falls within the terms of the statute, we need not decide whether, for constitutional purposes, it is properly regarded as a facial challenge or an as-applied challenge, though we note that "the distinction between facial and as-applied challenges is not . . .well defined." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010).

River points out that a comparable administrative review provision of the Clean Air Act explicitly states that challenges to regulations based on subsequent "after-arising" claims must be brought within sixty days. *See* 42 U.S.C. § 7607(b)(1).[2] So obviously Congress had in mind how to deal with a limitation on after-arising claims, if it had wanted one.

Coal River's argument is by no means insubstantial; it is superficially troubling, but ultimately we reject it and agree with the district court because Coal River's interpretation would essentially nullify the sixty-day limitation for challenges to rules under § 1276 (or any similar statute). That is so because there might be a number of new coal companies that could come into existence over a period of time after the initial sixty-day period passed. Under Coal River's interpretation, if each such company could challenge the regulations at any time, it would certainly frustrate Congress's objective that facial challenges to the regulation be confined to a limited period (the coal industry might take advantage of such a situation to fund new litigation, perhaps for a smaller company). Moreover, as the government notes, an absence of an explicit statute of limitations is "a void which is commonplace in federal statutory law." *Bd. of Regents of Univ. of State of N. Y. v. Tomanio*, 446 U.S. 478, 483 (1980). It is standard practice for courts to "borrow" a statute of limitations when one is not explicitly provided, and in this case, the most obvious limitations period is the one in the previous

---

[2]We have previously noted the different language used by the two statutes, though we did not have occasion to definitively interpret the Reclamation Act, as we do now. *See Am. Rd. & Transp. Builders Ass'n v. E.P.A.*, 588 F.3d 1109, 1113 (D.C. Cir. 2009).

clause.[3] Indeed, we discovered that two of our sister circuits have sanctioned that approach construing analogous statutes.[4]

Coal River claims that, even if the sixty-day statute of limitations applies, the statute is subject to equitable tolling because it is not jurisdictional. We need not decide whether the statute is jurisdictional, however, because Coal River has made no effort whatsoever to explain why equitable tolling would be appropriate in this case. The sixty-day limitation period, therefore, applies regardless of whether it is a jurisdictional bar.

Coal River alternatively contends that even if § 1276 would be a bar, if standing alone, it is not alone. It is argued that Coal River's claim under the Constitution itself for equitable relief and/or a cause of action under the APA provides alternative routes to judicial review. Coal River relies on the presumption of judicial review under APA (and the Constitution). To be sure, such a presumption is powerful, but it applies in situations where judicial review would be totally precluded, *see Bowen v. Michigan Acad. of Family Physicians*, 476 U.S. 667, 671 (1986), or would be realistically inadequate. *See Sackett v. E.P.A.*, 132 S. Ct. 1367, 1372 (2012). But where a federal claim is merely

---

[3] In its reply brief, Coal River argues that each payment of the tax constitutes an after-arising ground. Although we note that such an interpretation would eviscerate the sixty-day limitation for all plaintiffs, arguments raised for the first time in reply briefs are forfeited. *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008).

[4] *HRI, Inc. v. E.P.A.*, 198 F.3d 1224, 1239 n.9 (10th Cir. 2000) (construing 42 U.S.C. § 300j–7(a)); *Chevron U.S.A., Inc. v. U.S.E.P.A.*, 908 F.2d 468, 470 (9th Cir. 1990) (construing 33 U.S.C. § 1369(b)(1))

channeled to a single forum, the question is whether it is "fairly discernible" that Congress intended that particular review provision to be exclusive. *Elgin v. Dep't of Treasury*, 132 S. Ct. 2126, 2133 (2012). It seems quite apparent to us that Congress's fashioning of an explicit provision for judicial review of the promulgation of regulations – and limiting the time to raise such a challenge – meets the *Elgin* standard.

As we have held, however, a statute like § 1276 does not preclude a challenge when the government actually applies its regulation against a party; assuming, of course, that a party has an available procedure, it can mount a substantive rather than a "procedural" defense against the regulation. *See Indep. Cmty. Bankers of Am. v. Bd. of Governors of Fed. Reserve Sys.*, 195 F.3d 28, 34 (D.C. Cir. 1999) (citing *Functional Music, Inc. v. FCC*, 274 F.2d 543, 546 (D.C. Cir. 1958)). A substantive defense is one based on an argument that a regulation is not authorized by a statute or the Constitution, as opposed to a claim under the APA regarding the method used in promulgating the regulation, such as that it was issued without adequate notice, or that the government inadequately responded to comments. *See JEM Broad. Co., Inc. v. F.C.C.*, 22 F.3d 320, 325 (D.C. Cir. 1994).[5] So Coal River could certainly raise its constitutional challenge in the Court of Federal Claims after the fee is assessed. Indeed, both parties agree that route is available to appellant, but Coal River argues it is inadequate. And, as we noted, the presumption of judicial review would defeat an exclusive mode if the exclusive mode were quite inadequate.

---

[5]Appellant makes a rather silly argument based on a misreading of *Functional Music, Inc.* that the statute of limitations in § 1276 should be interpreted as precluding only direct procedural challenges, not substantive challenges.

Coal River's (rather half-hearted) reason for claiming that the Court of Federal Claims is inadequate is that the court cannot grant declaratory relief. But a determination of the Court of Federal Claims, upheld by the Federal Circuit, that the regulation was illegal as applied to sales for export would have all the force needed to complete relief without the formality of a declaratory order. Indeed, a suit for declaratory relief seems decidedly inferior, since it would provide only prospective relief, whereas a suit for damages can provide both prospective and retroactive relief. Coal River's real problem is that the route is closed, not by structural impediments, but because the Federal Circuit has already ruled against its position. Adequate review, however, entitles one to a procedurally fair forum, not to favorable substantive law.

\* \* \*

We determine that § 1276 applies to Coal River's claim and that its suit was untimely. The judgment of the district court is affirmed.

*So ordered.*