# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued March 23, 2015          Decided August 25, 2015

No. 14-1194

NEW YORK REPUBLICAN STATE COMMITTEE AND TENNESSEE
REPUBLICAN PARTY,
PETITIONERS

v.

SECURITIES AND EXCHANGE COMMISSION,
RESPONDENT

Consolidated with 14-5242

On Petition For Review and Appeal of a Final Order
of the Securities and Exchange Commission
(No. 1:14-cv-01345)

*Jason B. Torchinsky* argued the cause for petitioners.
With him on the briefs were *H. Christopher Bartolomucci*,
*Erin E. Murphy*, and *Brian J. Field*.

*Allen Dickerson* was on the brief for *amicus curiae*
Financial Services Institute, Inc. in support of appellants.

*Jeffrey A. Berger*, Senior Litigation Counsel, Securities
and Exchange Commission, argued the cause for respondent.
With him on the brief were *Michael A. Conley*, Deputy

General Counsel, *Jacob H. Stillman*, Solicitor, and *Jacob R. Loshin*, Attorney. *Thomas J. Karr*, Assistant Attorney General, entered an appearance.

*Ronald A. Fein* was on the brief for *amicus curiae* Free Speech For People in support of respondent.

*Muhammad Umair Khan* was on the brief for *amicus curiae* Letitia James, New York City Public Advocate, and Trustee of the New York City Employees' Retirement System in support of appellee/respondent.

*J. Gerald Hebert, Lawrence M. Noble*, *Fred Wertheimer*, and *Donald J. Simon* were on the brief for *amici curiae* The Campaign Legal Center and Democracy 21 in support of respondent-appellee.

Before: TATEL and PILLARD, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

PILLARD, *Circuit Judge*:  The New York Republican State Committee and the Tennessee Republican Party ("the plaintiffs") sued the Securities and Exchange Commission to invalidate a four-year-old rule, promulgated under the Investment Advisers Act of 1940, regulating campaign contributions by investment advisers.  The district court dismissed the suit for lack of subject matter jurisdiction, concluding that courts of appeals have exclusive jurisdiction to hear challenges to rules under the Act.  The plaintiffs appealed that decision and concurrently filed a petition asking this court for direct review.  We consolidated and expedited the cases.  We hold that courts of appeals have exclusive jurisdiction to hear challenges to rules promulgated under the

Investment Advisers Act. We therefore affirm the district court's decision. We also hold that such challenges must be brought in this court within sixty days of promulgation of the rule, and there are no grounds for an exception in this case: The law governing where to file was clear during the limitations period, and the length of time the statute affords for pre-enforcement review is adequate. We therefore dismiss the petition as time-barred.

## I.

"The Investment Advisers Act of 1940 was the last in a series of Acts designed to eliminate certain abuses in the securities industry, abuses which were found to have contributed to the stock market crash of 1929 and the depression of the 1930's." *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 186 (1963). The Act is the linchpin of the federal regulation of financial advisers and money managers. In enacting the Investment Advisers Act, "Congress intended . . . to establish federal fiduciary standards for investment advisers." *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 471 n.11 (1977); *see also Transamerica Mortg. Advisors Inc. v. Lewis*, 444 U.S. 11, 16-17 (1979). Most individuals and firms that provide paid advice about the value of securities or the advisability of investing in, purchasing, or selling them are considered to be investment advisers subject to the standards of conduct set forth in the Act. *See* 15 U.S.C. § 80b-2(a)(11).

Under the Act, the Commission has the authority to promulgate "rules and regulations . . . reasonably designed to prevent such acts, practices, and courses of business as are fraudulent, deceptive, or manipulative." *Id.* § 80b-6(4); *see also id.* § 80b-11(a). Congress also provided for judicial review of orders the Commission issues pursuant to the Act.

According to the relevant provision, "[a]ny person or party aggrieved by an order issued by the Commission" pursuant to the Act "may obtain a review of such order in" an appropriate court of appeals by filing a petition with that court "within sixty days after the entry of such order." *Id.* § 80b-13(a).

In 2010, the Commission promulgated a rule limiting investment advisers' campaign contributions to certain government officials. Such contributions are not banned, but they now come at a cost. If an investment adviser or certain of its employees contributes to the political campaign of a government official with the power to influence the adviser's hiring by a government client, the adviser must wait two years before it may provide services for compensation to that government client. *See Political Contributions by Certain Investment Advisers*, 75 Fed. Reg. 41,018 (July 14, 2010) (codified in part at 17 C.F.R. § 275.206(4)-5).

In August 2014, the plaintiffs sued the Commission in federal district court seeking an order declaring that the rule, as applied to federal campaign contributions, exceeds the Commission's statutory authority, violates the Administrative Procedure Act, and violates the First Amendment. They also sought an order enjoining the Commission from enforcing the rule with respect to federal campaign contributions. The district court dismissed the suit for lack of subject matter jurisdiction. *New York Republican State Comm. v. SEC*, 70 F. Supp. 3d 362, 364 (D.D.C. 2014). The plaintiffs appealed the district court's decision, and filed a parallel petition for review of the rule directly in this court.

## II.

The plaintiffs urge us either to reverse the decision of the district court or to grant their petition and exercise jurisdiction. First, they claim that the Investment Advisers

Act's review provision does not apply to their challenge because the text of the provision contemplates only review of the Commission's orders and says nothing of its rules. In the alternative, the plaintiffs argue that we should grant their petition for review even though it was not timely filed. They urge us to disregard the sixty day deadline in the Investment Advisers Act's review provision because, they contend, the law governing where and when they were supposed to file was so unclear that they were justified in filing late. Finally, they maintain that the statute's sixty-day period for mounting challenges to rules is unlawfully short. To afford plaintiffs a meaningful opportunity for pre-enforcement review, they contend, we should either disregard the statute's time limitation or recognize residual jurisdiction to bring their claims in the district court under the Administrative Procedure Act.

For the reasons that follow, we affirm the order of the district court and dismiss the petition. Precedent dictates the outcome of this case. For nearly four decades, it has been blackletter administrative law that, absent countervailing indicia of congressional intent, statutory provisions for direct review of orders encompass challenges to rules. Moreover, if the plaintiffs were uncertain about where and when to file their suit, our precedent gives precise instructions about what to do. The proper course for the plaintiffs to protect their rights was to file a petition with this court within sixty days of the rule's issuance, not to wait four years to test their claim. There is no basis for excusing the plaintiffs' failure timely to petition this court for review. The plaintiffs' final argument, that Congress cannot place a sixty-day limit on access to pre-enforcement relief, is similarly foreclosed.

6

**A.**

According to the plaintiffs, they appropriately and timely filed their suit in district court. They contend that the Investment Advisers Act's provision stating that parties "aggrieved by an order issued by the Commission . . . may obtain a review of such order in" an appropriate court of appeals, 15 U.S.C. § 80b-13(a), does not apply to them because it speaks only to review of "an order" and is silent about challenges to rules. Therefore, they say, the statute remitted them to filing in the district court under the Administrative Procedure Act's catch-all review provisions authorizing judicial review of final agency action when no other adequate relief is available. *See* 5 U.S.C. §§ 702-04. Because the Administrative Procedure Act was their route to review, the plaintiffs argue, they had six years rather than sixty days to sue under the default federal statute of limitations applicable to suits against the United States. *See* 28 U.S.C. § 2401. We reject that argument because longstanding precedent dictates that the word "order" in the Investment Advisers Act encompasses rules.

Our decision in *Investment Company Institute v. Board of Governors of the Federal Reserve System* controls this case. In *Investment Company* we explained that "the purposes underlying" a provision in the Bank Holding Company Act of 1956, similar to the provision at issue in this case, would "best be served if 'order' [were] interpreted to mean any agency action capable of review on the basis of the administrative record." 551 F.2d 1270, 1278 (D.C. Cir. 1977). The review provision at issue in *Investment Company* stated that "[a]ny party aggrieved by an order of the" Federal Reserve Board could "obtain a review of such order in" an appropriate court of appeals "within thirty days after the entry of the Board's order." *Id.* at 1273 n.3 (quoting

12 U.S.C. § 1848 (1970)). We held that the provision's reference to orders vested the courts of appeals with exclusive jurisdiction to hear challenges to rules as well as orders. *See id.* at 1278.

*Investment Company* resolved longstanding uncertainty about the correct interpretation of statutes that provide for direct review of orders, but not rules. *Id.* at 1272. The *Investment Company* court confronted an unsettled legal landscape. Courts facing various administrative actions with distinct administrative records under diverse statutes had arrived at inconsistent conclusions regarding whether particular agency actions constituted "order[s]" for purposes of their direct review provisions. *Id.* at 1276-78. The court noted that the circuit in an earlier case, *United Gas Pipe Line Co. v. Fed. Power Comm'n*, 181 F.2d 796 (D.C. Cir. 1950), had attempted to create a presumption that orders did not encompass rules. The *Investment Company* court concluded that *United Gas* had been undermined by contrary circuit precedent and was in tension with several decisions by the Supreme Court that had read "order" in special-review provisions to encompass rules. *Investment Company*, 551 F.2d at 1276 (citing *United States v. Storer Broad. Co.*, 351 U.S. 192 (1956)); *see also* David P. Currie & Frank I. Goodman, *Judicial Review of Federal Administrative Action*, 75 Colum. L. Rev. 1, 39-41 (1975).

The court thus concluded that *United Gas* was no longer controlling law, and established the contrary presumption that, absent contrary congressional intent, a statutory review provision creating a right of direct judicial review in the court of appeals of an administrative "order" authorizes such review of any agency action that is otherwise susceptible of review on the basis of the administrative record alone. *Investment Company*, 551 F.2d at 1278. Courts of appeals should have

exclusive jurisdiction in such circumstances, the court held, to eliminate "unnecessary duplication and conflicting litigation, as well as the confusion inherent in the prospect of different records and standards of review." *Id.* at 1279 (internal quotation marks omitted).

The *Investment Company* court explained the many sensible justifications for its holding. In rulemakings, in which there is no need for judicial development of an evidentiary record, there is no gain from vesting jurisdiction in district courts. *Id.* at 1276-77. Direct review in the court of appeals has the advantage of both eliminating the "unnecessary delay and expense" attending litigation in two courts and abolishing the "undesirable bifurcation of the reviewing function between the district courts [for rules] and the courts of appeals [for orders]." *Id.* at 1276. The court also addressed the textual objection to interpreting "order" to encompass rules by noting that "the word 'order' has several frequently utilized meanings which vary in scope, and it is therefore not surprising that different sections of the same statute might use the word in different ways." *Id.* at 1278.

That *Investment Company* presumption is now a tenet of administrative practice and is hornbook administrative law. *See* 3 Richard J. Pierce, Jr., *Administrative Law Treatise* § 18.2, at 1682-83 (5th ed. 2010); 33 Charles Alan Wright & Charles H. Koch, *Federal Practice and Procedure* § 8299, at 34-35 (2006) (explaining that the presumption expressed in *Investment Company* is "pretty much settled" and "has remained unchanged" since its adoption). Innumerable litigants have relied on it to determine where and when to file challenges to agency rules across a broad spectrum of statutes promulgated by numerous agencies. We have, for example, applied it when reviewing rules promulgated by the Securities and Exchange

Commission, the Federal Aviation Administration, and the Department of Transportation implementing statutes ranging from the Securities Act to the National Parks Overflights Act. *See Nat'l Fed'n of Blind v. U.S. Dep't of Transp.*, --- F.Supp.3d ----, No. 14-CV-85, 2015 WL 349156, at *3 (D.D.C. Jan. 28, 2015) (collecting cases); *New York Republican State Comm.*, 70 F. Supp. 3d at 371 (collecting cases); Resp. Br. 19 n.5 (collecting cases).

We have even applied the presumption—that statutory authorization of direct federal judicial review of agency "order[s]" encompasses rules—to the Investment Advisers Act. *See Fin. Planning Ass'n v. SEC*, 482 F.3d 481 (D.C. Cir. 2007); *Goldstein v. SEC*, 451 F.3d 873 (D.C. Cir. 2006). We may not have remarked on the jurisdictional question in those cases, but our willingness to exercise jurisdiction without comment is consistent with the recognized controlling force of *Investment Company*. *Goldstein v. SEC* is especially pertinent here because, in that case, the plaintiffs simultaneously sued in the district court and petitioned this court for direct review, and cited to *Investment Company* in their opening brief as the basis for our jurisdiction. *See New York Republican State Comm.*, 70 F. Supp. 3d at 371 & n.7 (discussing *Goldstein*). We exercised original appellate jurisdiction and the parties voluntarily dismissed the district court proceeding. *Id.* Thus, the plaintiffs' argument that *Investment Company* is a new rule, and is somehow narrow or limited to its facts, is inconsistent with both practice and precedent.

The presumption in *Investment Company* decides this case. The Investment Advisers Act authorizes judicial review in a provision closely analogous to the one examined in *Investment Company*. *Compare* 12 U.S.C. § 1848 *with* 15 U.S.C. § 80b-13(a). Both statutory schemes authorize the

agency to proceed by "order" or "regulation." 12 U.S.C. § 1843(c)(8); 15 U.S.C. § 80b-11(a). Both provide that any party "aggrieved by an order issued by the" agency "may obtain review of such order" in an appropriate court of appeals. 12 U.S.C. § 1848; 15 U.S.C. § 80b-13(a). The plaintiffs have pointed to no evidence showing that Congress intended to withdraw from the courts of appeals our jurisdiction to hear challenges to rules promulgated under the Act. We therefore have exclusive jurisdiction over this case.

The plaintiffs' arguments against following *Investment Company* here are not persuasive. Plaintiffs contend that, in the decades since we decided *Investment Company*, our cases have systematically eroded its foundations. They maintain that our Administrative Procedure Act decisions have in other contexts reasserted a distinction between "orders" and "rules" that should govern our interpretation of special statutory review provisions. The plaintiffs contend, for example, that we should apply the "definitions" section of the Administrative Procedure Act broadly to hold that the word "order" in the Investment Advisers Act's review provision cannot mean "rule." *See* 5 U.S.C § 551(5)-(7). We decline that invitation for the reasons given in *Investment Company* itself, which expressly considered the APA's narrow definition of "order" to mean a disposition "in a matter other than rulemaking." 551 F.2d at 1278. Our court explained that the word "order" is a word of many meanings, and it makes sense to read it broadly in the context of direct review provisions unless a statute has separate review provisions for "rules" and "orders." The multi-purpose Administrative Procedure Act's definitions distinguishing between a "rule" and an "order" are directed generally at that Act. They expressly apply only to "this subchapter" (i.e. the Administrative Procedure Act itself). *See id.* Those general-purpose definitions are not a compelling reason to

ignore this court's precedent specific to direct appellate review provisions in statutes like the Investment Advisers Act, enacted before the Administrative Procedure Act, when rulemaking was not yet a common method of agency decision making. The adequacy-of-record and judicial-efficiency rationales that animated our decision in *Investment Company* remain persuasive today.

The plaintiffs point to three decisions that they believe show that the *Investment Company* presumption is not controlling, but each is materially distinct from this case. In *Watts v. SEC*, we looked to the Administrative Procedure Act to help us to determine whether an instruction from the Commission to its employees not to respond to a testimonial subpoena was an "order" for purposes of the direct-review provision of the Exchange Act of 1934. 482 F.3d 501, 504-06 (D.C. Cir. 2007). The question in *Watts* was whether such an instruction was reviewable agency action, or only "an ordinary litigation decision." *Id.*at 506. Use of the Administrative Procedure Act there to determine whether the agency acted in its sovereign lawmaking capacity or as a litigant has no bearing on this case.

In *National Mining Association v. Department of Labor*, the government argued no court could exercise pre-enforcement review of regulations administering the Black Lung Benefits Act. 292 F.3d 849, 856 (D.C. Cir. 2002) (per curiam). We disagreed, holding that district courts could exercise jurisdiction over such challenges under the Administrative Procedure Act. *Id.* at 859. But the statutory scheme in *National Mining Association* was structured very differently from the one at issue in this case. The direct review provision there did not encompass orders issued by the agency, but rather a specific adjudicatory body within it—a "Benefits Review Board"—that had no authority to issue

rules. 33 U.S.C. § 921(c); *see also* 30 U.S.C. § 932(a), 936(a) (vesting rulemaking authority in the Secretary of Labor). The act made "rather clear" that "Congress used the term 'order' to refer to an adjudicatory compensation order, not the promulgation of a regulation." *Nat'l Mining Ass'n*, 292 F.3d at 856-57 (citing 33 U.S.C. § 921(b), (e)).

The direct review provision in *National Mining Association* was limited to a particular kind of order issued by a particular kind of body within the agency and therefore did not impliedly grant the court of appeals authority to review the agency's rules. We thus concluded that "Congress was silent on how review of regulations was to be accomplished," *id.* at 856, and so held that the Administrative Procedure Act provided the proper avenue to relief. *National Mining* treats the Black Lung Benefits Act like a statute lacking any direct review provision governing challenges to the actions of the agency, rather than like a statute akin to the Investment Advisers Act, in which Congress included such a provision and the question is how broadly Congress intended that provision to be read.

Lastly, in *American Petroleum Institute v. SEC*, we found that Congress had evinced its intention to depart from the *Investment Company* rule. 714 F.3d 1329 (D.C. Cir. 2013). Congress had (1) amended the statute's direct review provision on multiple occasions in the years after *Investment Company*, thereby indicating congressional interest in the precise wording of its text, and (2) provided explicitly for review of rules enacted pursuant to some parts of the statute and not others. *Id.* at 1332-35. Those specific indicia of intent to depart from *Investment Company* are absent from the Investment Advisers Act.

The plaintiffs also argue that *Investment Company* was wrongly decided and therefore should be limited to its facts. To the extent the plaintiffs ask that we overturn an earlier decision because we disagree with it, that we cannot do. We are obliged to follow the law of the circuit, *see LaShawn A. v. Barry*, 87 F.3d 1389, 1395 (D.C. Cir. 1996) (en banc), and *Investment Company* is the law of the circuit. We are bound to follow it.

To the extent the plaintiffs ask us not to overrule *Investment Company*, but to read it narrowly based on what they contend is its undesirability, we decline to do so. The Supreme Court has tacitly approved of the practical course we charted in *Investment Company*. Almost a decade later, the Court announced an analogous presumption. *See Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744-45 (1985). The Court held that, absent a "firm indication" of a contrary intention, when a direct review provision's applicability to an agency action is "ambiguous," we presume that Congress intended to locate jurisdiction in the courts of appeals. *Id.* at 737, 745; *Nat'l Auto. Dealers Ass'n v. FTC*, 670 F.3d 268, 270 (D.C. Cir. 2012). In so doing, the Court cited *Investment Company* approvingly and echoed its logic. *Lorion*, 470 U.S. at 742-45.

Finally, *Investment Company*'s interpretation of the word "order" to encompass rules is not a strained one. That term is ubiquitous in the law, and has meant somewhat different things in widely varying contexts. The *Investment Company* presumption reflects a pragmatic interpretation sensitive to developments in administrative law that could not have been foreseen by the Congress that enacted the Investment Advisers Act. When Congress enacted the Act in 1940, the courts generally declined to engage in pre-enforcement review of agency rules because such challenges were thought

unripe. Nicholas Bagley, *The Puzzling Presumption of Reviewability*, 127 Harv. L. Rev. 1285, 1337-38 (2014). Drafters of review provisions thus were not typically considering those challenges.

In sum, *Investment Company* dictates the outcome of this case. We therefore hold that the word "order" in the Investment Advisers Act recognizes the exclusive jurisdiction of the courts of appeals to hear challenges to rules promulgated thereunder.

**B.**

Plaintiffs argue in the alternative that we should grant their petition for direct review. The Investment Advisers Act requires that challenges be brought within sixty days, 15 U.S.C. § 80b-13(a), but plaintiffs filed their petition four years after the rule they oppose went into effect. Unless plaintiffs can identify a reason to excuse their late filing, their petition is time-barred.

We should excuse their untimely filing, plaintiffs contend, because they lacked fair notice that they were required to petition directly in this court, so were justifiably unaware that they would be subject to the Investment Advisers Act's sixty-day limitations period rather than the Administrative Procedure Act's six-year period. Plaintiffs cite no case in which we have excused an untimely filing for lack of fair notice based on a party's erroneous identification of the relevant forum and limitations period.

Even if we construe plaintiffs' argument as a request for equitable tolling, they have not shown any ground entitling them to such relief. As a threshold matter, in appropriate circumstances the review provision in the Investment Advisers may be equitably tolled. We may equitably toll a

statutory deadline unless Congress has shown its intent to withdraw our jurisdiction once a deadline is missed. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515-16 (2006); *Menominee Indian Tribe of Wisconsin v. United States*, 614 F.3d 519, 523-25 (D.C. Cir. 2010). There is no evidence that Congress sought to treat the sixty-day deadline in the Investment Advisers Act as a jurisdictional bar. The deadline is thus capable of equitable tolling.

But there is no basis for equitable tolling in this case. Equitable tolling is available to a party "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010). The plaintiffs have not shown that they were diligent or faced an extraordinary obstacle to filing their claims. *Investment Company* explains that "[i]f any doubt as to the proper forum exists, careful counsel should file suit in both the court of appeals and the district court or . . . bring suit only in the court of appeals." 551 F.2d at 1280; *see id.* at 1282. Plaintiffs have not explained why they failed timely to file such a protective petition, other than to assert that they thought the controlling law was unclear. The *Investment Company* presumption is not new and should not have caught plaintiffs unawares. It is routinely cited in our cases and explained in major treatises. *See, e.g.*, *Weaver v. Fed. Motor Carrier Safety Admin.*, 744 F.3d 142, 147 (D.C. Cir. 2014) (quoting *Investment Company*, 551 F.2d at 1277); 3 Pierce, *supra*, § 18.2, at 1682-83; Wright & Koch, *supra*, § 8299, at 35. Legions of litigants have timely filed their petitions for review of rules adopted by the Commission and other agencies with similar direct-review provisions. A litigant's own "tactical mistakes" and "inauspicious legal judgments" do not amount to an "extraordinary obstacle" sufficient to warrant equitable tolling. *Menominee Indian Tribe of*

*Wisconsin v. United States*, 764 F.3d 51, 58, 62 (D.C. Cir. 2014), *cert. granted*, No. 14-510, 2015 WL 2473530 (U.S. June 30, 2015).  We hold that the plaintiffs' petition is time-barred.

## C.

The plaintiffs' final argument is that a sixty-day deadline for bringing pre-enforcement challenges to agency rules is either unconstitutional or of sufficiently doubtful constitutionality as to demand a saving construction.  They argue that we should either (1) exercise jurisdiction and disregard the sixty-day period for filing petitions in this court because it is too short to comport with due process, or (2) hold that the district court has jurisdiction under the Constitution or the Administrative Procedure Act because the Investment Advisers Act's review provision offers inadequate relief.

The plaintiffs' arguments are foreclosed on all fronts.  To the degree the plaintiffs argue that the Advisers Act's sixty-day deadline is so short it amounts to a facial denial of due process, we are unpersuaded.  A limitations period is only too short if "the time allowed [to file a claim] is manifestly so insufficient that the statute becomes a denial of justice." *Wilson v. Iseminger*, 185 U.S. 55, 63 (1902).  That standard can be applied only in the context of a concrete claim.  *See id.* Faced with typical pre-enforcement challenges to agency action, we have on many occasions strictly enforced congressionally-imposed short limitations periods across a range of regulatory statutes.  *See, e.g.*, *JEM Broad. Co. v. FCC*, 22 F.3d 320, 325-26 (D.C. Cir. 1994); *Raton Gas Transmission Co. v. FERC*, 852 F.2d 612, 614-16 (D.C. Cir. 1988); *Eagle-Picher Indus., Inc. v. EPA*, 759 F.2d 905, 911-12 (D.C. Cir. 1985).  We find no ground for holding that

the Investment Advisers Act's sixty-day period for seeking judicial review violates the plaintiffs' due process rights, whether on its face or as applied here.

If we understand plaintiffs to press the narrower point that the statutory time limitation unlawfully cuts off access to pre-enforcement review of their First Amendment claim, we still cannot agree. There is, to be sure, a strong presumption of judicial review under the Administrative Procedure Act, *see Bowen v. Michigan Acad. of Family Physicians*, 476 U.S. 667, 670 (1986), and the courts' willingness to permit pre-enforcement review is "at its peak" when claims are rooted in the First Amendment, *Unity08 v. FEC*, 596 F.3d 861, 865 (D.C. Cir. 2010). We recognize the importance of the right to bring pre-enforcement First Amendment claims. For many decades, the courts have shown special solicitude to pre-enforcement challenges brought under the First Amendment, relaxing standing requirements and fashioning doctrines, such as overbreadth and vagueness, meant to avoid the chilling effects that come from unnecessarily expansive proscriptions on speech. *See Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 870-74 (1997); *Broadrick v. Oklahoma*, 413 U.S. 601, 611-15 (1973); *Martin Tractor Co. v. Fed. Election Comm'n*, 627 F.2d 375, 380-81 (D.C. Cir. 1980). The Supreme Court has also warned that delay in decision of First Amendment claims typically exacerbates speech-related harm. *See, e.g.*, *Freedman v. State of Md.*, 380 U.S. 51, 57-59 (1965).

Congress did not, however, withdraw pre-enforcement review in this case, but merely set a particular procedure and time period in which to do so. The plaintiffs had access to that procedure and did not take advantage of it. Agencies, no less than private litigants, have interests in finality and certainty. *See JEM Broad. Co.*, 22 F.3d at 325. Finality of

regulations serves the public interest insofar as people cannot reliably order their affairs in accordance with regulations that remain for long periods under the cloud of categorical legal attack. *See Investment Company*, 551 F.2d at 1280.

We also reject the plaintiffs' argument that we should locate a residuum of jurisdiction in the district courts to hear their First Amendment claims. Our precedent dictates that the existence of the special statutory review provision divests district courts of jurisdiction to hear pre-enforcement challenges, even of constitutional claims, unless the relief provided by the statutory review provision is "totally precluded" or "realistically inadequate." *See Coal River Energy, LLC v. Jewell*, 751 F.3d 659, 663-64 (D.C. Cir. 2014). Thus, unless the Investment Advisers Act's review provision is shown to be an unavailable or inadequate remedy for the plaintiffs' First Amendment challenges, it is the exclusive mechanism by which such claims may be brought. We have no basis here on which to conclude either that the statutory review provision is an inadequate remedy or that the application of its sixty-day limitations period in the circumstances before us is so harsh as to operate as a denial of justice. *See Iseminger*, 185 U.S. at 63; *Coal River Energy*, 751 F.3d at 664; *see also Bowen v. Massachusetts*, 487 U.S. 879, 901 (1988) (providing for APA review in district court when Congress's specific remedy is too "doubtful and limited").

Congress has provided an additional avenue to pre-enforcement review of the plaintiffs' First Amendment claims. The Administrative Procedure Act gives "an interested person the right to petition for the issuance, amendment, or repeal of a rule." 5 U.S.C. § 553(e). The Commission similarly provides by regulation that "any person" may petition for the amendment or repeal of any

Commission rule. 17 C.F.R. § 201.192(a). If the Commission denies an individual's petition, she may then petition this court for review of the Commission's decision to deny the petition. *See, e.g.*, *Timpinaro v. SEC*, 2 F.3d 453, 460-61 (D.C. Cir. 1993) (reviewing Commission's denial of a petition to repeal a rule under the Exchange Act). Thus, in this case, the plaintiffs might still seek pre-enforcement review after they have made their First Amendment case to the Commission. They are not required to violate the regulation and risk prosecution to test their First Amendment rights.

We thus hold that the review provision in the Investment Advisers Act provides adequate relief for constitutional and nonconstitutional challenges to rules promulgated under the Act, and therefore is the exclusive means for doing so.

\* \* \*

For the foregoing reasons, we affirm the decision of the district court and dismiss the petition for review.

*So ordered.*