# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued December 16, 2019   Decided April 28, 2020

No. 16-1149

BERNERD E. YOUNG,
PETITIONER

v.

SECURITIES AND EXCHANGE COMMISSION,
RESPONDENT

On Petition for Review of an Order of
the Securities & Exchange Commission

*Minh Nguyen-Dang*, appointed by the court, argued the cause as *amicus curiae* for petitioner. On the brief was *Brian D. Netter*, appointed by the court.

*Bernerd E. Young*, *pro se*, argued the cause and filed the briefs for petitioner.

*Dina B. Mishra*, Senior Counsel, U.S. Securities and Exchange Commission, argued the cause for respondent. With her on the brief were *Mark R. Freeman*, *Mark B. Stern*, and *Daniel Aguilar*, Attorneys, U.S. Department of Justice, *Michael A. Conley*, Solicitor, U.S. Securities and Exchange Commission, and *Dominick V. Freda*, Assistant General

Counsel.  *Lisa K. Helvin*, Attorney, U.S. Securities and Exchange Commission, entered an appearance.

Before: WILKINS, *Circuit Judge*, and WILLIAMS and SENTELLE, *Senior Circuit Judges*.

Opinion for the court filed by *Circuit Judge* WILKINS.

Opinion concurring in the judgment filed by *Senior Circuit Judge* WILLIAMS.

WILKINS, *Circuit Judge*: In 2012 the Securities and Exchange Commission prosecuted Bernerd Young for multiple securities violations based on his participation in a multi-billion dollar Ponzi scheme between 2006 and 2009, during the height of the financial crisis.  After a hearing, an administrative law judge (ALJ) found him liable on most of the charges and imposed various penalties, including disgorgement of nearly $600,000, which represented about half of the compensation he received between 2006 and 2009.  The Commission affirmed the ALJ's decision, and Young filed a petition for review.  However, he filed his petition in the District of Columbia Court of Appeals, which is the wrong court.  By the time he realized his mistake and filed the petition in our Court, the sixty-day deadline for filing had passed.

We do not pass upon whether the statutory time limit to file a petition for review is jurisdictional and subject to equitable tolling.  Instead, we conclude that, even assuming it is a non-mandatory claims processing rule, Young has failed to demonstrate entitlement to equitable tolling.  Filing a petition for review in a state court that clearly lacks jurisdiction over the petition does not toll the deadline for filing in our Court.  And because no extraordinary circumstance beyond his control

prevented him from timely filing in our Court, he is not entitled to equitable tolling, and we must dismiss his petition.

## I.

From 2006 to 2009, Bernerd Young was the Chief Compliance Officer at Stanford Group Company ("SGC"). SGC was an affiliate of Stanford Financial Group ("SFG"), a network of companies controlled by Allen Stanford. Based in Houston, SGC was a dually registered investment adviser and broker-dealer that heavily marketed to U.S. investors so-called "certificates of deposit" ("CDs"). These CDs were issued by another SFG affiliate: Stanford International Bank Limited ("SIB"), an offshore Antiguan bank established by Allen Stanford. As Chief Compliance Officer, Young was responsible for ensuring the accuracy of SGC's statements in promoting these CDs. The CDs, which accounted for 55.38% of SGC's revenue between 2006 and 2009, purported to be "invested in diversified and liquid holdings" that generated "consistent above-market returns" for investors. J.A. 166. In fact, however, SIB was operating a Ponzi scheme.

SIB supported its CDs with "detailed marketing materials and annual reports showing steady growth." *United States v. Stanford*, 805 F.3d 557, 564 (5th Cir. 2015). Meanwhile, Allen Stanford "spent lavishly, purchasing boats, mansions, and personal aircraft and sponsoring high-dollar cricket tournaments." *Id.* The scheme collapsed in 2009, when new CD investments became insufficient to cover the interest and redemption payments owed to current SIB investors. *Id.* The Commission promptly instituted a civil action against Allen Stanford, SIB, and other companies and persons involved in the sale and promotion of the CDs, alleging an $8 billion fraudulent scheme. In March 2012, Stanford was convicted of numerous federal crimes and sentenced to 110 years in prison,

*id.* at 565, and he was later ordered to disgorge $5.9 billion in ill-gotten gains, *SEC v. Stanford Int'l Bank, Ltd., et.al.*, No. 3:09-CV-0298-N, 2013 WL 12360438, at *5 (N.D. Tex. Apr. 25, 2013).

In August 2012, after a lengthy investigation, the Commission instituted proceedings against Young and two other former officers of SGC, charging them with various violations of federal securities laws. Young was represented by counsel before an ALJ.[1] Following a fifteen-day hearing, at which 26 witnesses testified and over 350 exhibits were presented, the ALJ issued an initial decision in August 2013, which found Young and the other two respondents liable on most of the charges.

Specifically, the ALJ concluded that Young and the other two respondents negligently failed to conduct reasonable diligence in investigating the CDs. Despite this lack of diligence, Young and the respondents approved SGC's use of materials that misrepresented material facts to investors about the liquidity of SIB's underlying investment portfolio. Later, clients and potential clients began expressing concerns that SIB's model was indicative of a Ponzi scheme akin to the one Bernie Madoff had recently been caught orchestrating, and that Antiguan regulators were being corruptly influenced by Allen Stanford.[2] The ALJ concluded that, after hearing these concerns, Young and the other respondents "decided that SGC should 'attack' with talking points," rather than "investigate the[ir] possible truthfulness." J.A. 51. As the ALJ explained,

---

[1] At that time, "the Commission had left the task of appointing ALJs … to SEC staff members." *Lucia v. SEC*, 138 S. Ct. 2044, 2050 (2018). Neither the President nor the Commission itself played any role in this selection and appointment process.

[2] Indeed, Young himself admitted at the hearing that he suspected Antiguan regulators might be under Allen Stanford's influence.

they "went on a damage control road show," J.A. 52, designed to "lull customers so as to forestall redemptions and continue sales of the SIB CD." J.A. 51.

The ALJ imposed multiple sanctions against Young and the other two respondents. The ALJ (1) ordered them to cease and desist from committing or causing any future violations of the securities laws at issue; (2) imposed a civil penalty of $260,000; and (3) permanently barred them from working in the securities industry. In addition, the ALJ ordered Young to disgorge $591,992.46, or 55.38% of the $1,068,964.36 in payroll compensation he received from SGC between 2006 and 2009.

The other two respondents did not seek Commission review of the ALJ's decision, but Young did. Now proceeding *pro se*, Young timely petitioned the Commission for review in September 2013. On March 24, 2016, the Commission issued a unanimous opinion and order affirming the ALJ's decision and the penalties.

Young had sixty days to seek review of the Commission's decision, either from our Circuit or the circuit in which he resides or maintains his principal place of business. *See* 15 U.S.C. §§ 77i(a), 78y(a)(1), 80b-13(a), and 80a-42(a). On May 23, 2016, the last day to file, he filed a petition for review, but filed it with the wrong court – the District of Columbia Court of Appeals (DCCA). Young had previously contacted the DCCA and received instructions on how to file a petition there. On May 24, the DCCA contacted Young and informed him of his error. Young, who happened to be in Washington, D.C. at the time, retrieved his petition from the DCCA and refiled it in our Court later that same day – one day too late. Young's petition was docketed, and we issued an order to show cause why the petition should not be dismissed for lack of

jurisdiction. After Young explained the circumstances, we discharged the order to show cause and directed the parties to address our jurisdiction in their merits briefs.

During briefing, we granted the Commission's motion to hold the case in abeyance pending the resolution of *Lucia v. SEC*, in which the Supreme Court ultimately held that SEC ALJs are "Officers of the United States" under the Appointments Clause, and that ALJs not appointed by the President were thus unconstitutionally appointed. 138 S. Ct. at 2053. Thereafter, the parties filed motions to govern further proceedings. In his motion, Young sought leave to file a supplemental brief addressing both *Lucia* and *Kokesh v. SEC*, in which the Supreme Court held that the five-year statute of limitations for any "action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise" applies to disgorgement imposed as a sanction for violating a federal securities law. 137 S. Ct. 1635, 1643 (2017) (interpreting 28 U.S.C. § 2462). Given the new complexity of the case, we appointed amicus curiae on March 4, 2019 to present arguments in support of Young's position, and we entered a new briefing schedule. The case is now ready for our consideration.

## II.

Before we may consider the merits of Young's petition, we must determine whether a basis exists to excuse his petition's untimeliness.

As an initial matter, Amicus argues that because Young's petition complied with every requirement except for the place of filing, his petition was, in effect, in compliance with the sixty-day deadline. We disagree.

Amicus relies on *Torres v. Oakland Scavenger Company*, 487 U.S. 312, 316-17 (1988), and *Anderson v. District of Columbia*, 72 F.3d 166, 167 (D.C. Cir. 1995) (per curiam), but these cases speak to petitions that are timely filed in the correct court but contain some technical defect. In *Torres*, the Supreme Court explained that where "a litigant files papers in a fashion that is technically at variance with the letter of a procedural rule, a court may nonetheless find that the litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule requires." 487 U.S. at 316-17 (citations omitted). Relying on this principle, our Court later held that an appellant who had "timely filed a notice of appeal in the district court but improperly designated the United States Supreme Court as the court to which the appeal was taken" had functionally complied with the filing requirements. *Anderson*, 72 F.3d at 167-68 ("[A] defective notice of appeal does not warrant dismissal where the intention to appeal to a certain court of appeals may be inferred from the notice and where the defect has not materially misled the appellee."). Unlike the appellant in *Anderson*, however, Young did not timely file a petition in our court that happened to have some technical defect. Rather, he did not timely file a petition in our court at all.

Amicus next argues that, even if the petition was untimely, the deadline is not jurisdictional and we may excuse the petition's untimeliness in these circumstances.

Filing deadlines fall into one of three categories: (1) jurisdictional deadlines, which cannot be equitably tolled by the court or waived by an opposing party, (2) mandatory claims-processing deadlines, which are subject to equitable tolling unless properly raised by an opposing party, in which case they are unalterable, or (3) nonmandatory claims-processing deadlines, which are both subject to equitable

tolling and flexible when raised by an opposing party. *Bowles v. Russell*, 551 U.S. 205, 213 (2007); *Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710, 714 (2019). Here, the SEC argues that the time limit is jurisdictional, while Amicus argues that the time limit is a nonmandatory claims-processing rule. We need not resolve this dispute, however, because even assuming the time limit is both nonjurisdictional and nonmandatory, Young cannot show entitlement to equitable tolling. *See Coal River Energy, LLC v. Jewell*, 751 F.3d 659, 663 (D.C. Cir. 2014) (declining to decide whether a statute of limitations is jurisdictional because the appellant failed to establish entitlement to equitable tolling); *see also Norman v. United States*, 467 F.3d 773, 776 (D.C. Cir. 2006) (same).

The party arguing for equitable tolling bears the burden of demonstrating entitlement to it. *United States v. Saro*, 252 F.3d 449, 454 (D.C. Cir. 2001). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (citations omitted). "To count as sufficiently 'extraordinary' to support equitable tolling, the circumstances that caused a litigant's delay must have been beyond its control." *Menominee Indian Tribe of Wis. v. United States*, 764 F.3d 51, 58 (D.C. Cir. 2014), *aff'd,* 136 S. Ct. 750 (2016). Relevant here, "[t]he circumstance that stood in a litigant's way cannot be a product of that litigant's own misunderstanding of the law or tactical mistakes in litigation." *Id.*

To meet this heavy burden, Amicus primarily relies on *Burnett v. New York Central Railroad Company*, 380 U.S. 424 (1965). In that case, the petitioner filed an action under the Federal Employers' Liability Act (FELA) in an Ohio state court that had concurrent jurisdiction over the action. *Id.* at

424-25. However, the state court dismissed his action because venue was improper. *Id.* at 425. Eight days later, he filed an identical action in an Ohio federal court. *Id.* This time, the complaint was dismissed because "although the state suit was brought within [FELA's] limitations period, the federal action was not." *Id.* The court of appeals affirmed the dismissal, but the Supreme Court reversed. *Id.* at 424-26. Specifically, the Court concluded that "when a plaintiff begins a timely FELA action in a state court of competent jurisdiction, service of process is made upon the opposing party, and the state court action is later dismissed because of improper venue, the FELA limitation is tolled during the pendency of the state action." *Id.* at 428.

The SEC argues that *Burnett* does not apply here, because the plaintiff in that case filed his claim in a court of "competent jurisdiction" – that is, a state court with concurrent jurisdiction over the claim. SEC Resp. Br. at 35. We agree. In *Burnett*, "[t]here [wa]s no doubt that, as a matter of federal law," the plaintiff's action "was properly 'commenced' within the meaning of the federal limitation statute." 380 U.S. at 426. Therefore, the plaintiff "did not sleep on his rights but brought an action within the statutory period in the state court of competent jurisdiction." *Id.* at 429. The only reason that the plaintiff had to refile his suit in federal court was because Ohio state law did not allow such an action to be transferred to a federal court. *Id.* at 426. By contrast, Young's petition was not "properly commenced," because it was not filed in a court with concurrent jurisdiction over it. *See id.* at 426, 429.

Every circuit that has considered the question before us has held that filing an action in a state court or federal agency that clearly lacks jurisdiction over the action does not toll the time for filing in federal court. *See Thompson v. Comm'r of Soc. Sec. Admin.*, 919 F.3d 1033, 1037 (8th Cir. 2019) ("The

rationale of [*Burnett*] does not extend to a situation like this one under [42 U.S.C] § 405(g), where federal courts have exclusive jurisdiction over a claim, and the complainant mistakenly corresponds with an agency rather than a court of competent jurisdiction."); *Jackson v. Astrue*, 506 F.3d 1349, 1357 (11th Cir. 2007) (affirming dismissal of action under 42 U.S.C. 405(g) because "[t]he [state court] in which [the appellant] filed her claim was not a court of competent jurisdiction over her claim"); *Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 946 (6th Cir. 2002) ("We agree with the district court that plaintiffs' claims . . . were within the exclusive jurisdiction of the federal district court and, therefore, the filing in state court did not toll the statute of limitations."); *Shofer v. Hack Co.*, 970 F.2d 1316, 1319 (4th Cir. 1992) ("The commencement of an action in a clearly inappropriate forum, a court that clearly lacks jurisdiction, will not toll the statute of limitations. . . . Because the state court clearly lacked jurisdiction over the ERISA fiduciary duty claims, *Burnett* . . . [does] not apply, and equitable tolling under federal tolling principles is not appropriate in this case."). We now join them.

To be sure, where a litigant "reasonably believe[s]" that the state court possesses concurrent jurisdiction over a federal claim, courts will toll the limitations period from the filing of the state action. *See Fox v. Eaton Corp.*, 615 F.2d 716, 719-21 (6th Cir. 1980) ("[A]s a general matter, the filing of an action in a court that clearly lacks jurisdiction will not toll the statute of limitations. But in this case, the lack of jurisdiction in the state court was far from clear."); *see also Valenzuela v. Kraft, Inc.*, 801 F.2d 1170, 1175 (9th Cir. 1986) ("At the time Valenzuela filed her action in state court it was unclear whether federal courts had exclusive jurisdiction over Title VII claims. . . . Tolling the 90-day filing period in this case is consistent with the remedial purpose of Title VII legislation."). But this is not such a case. There was no reasonable basis for

Young to believe that the DCCA possessed concurrent jurisdiction over a petition for review of an SEC order.

Amicus also invokes Young's *pro se* status as a justification for his confusing two similarly named courts. But ignorance of the law is not an appropriate basis for equitable tolling. *See United States v. Cicero*, 214 F.3d 199, 203 (D.C. Cir. 2000) ("[I]gnorance of the law or unfamiliarity with the legal process will not excuse [a litigant's] untimely filing, nor will a lack of representation during the applicable filing period.") (citations omitted); *Richards v. Mileski*, 662 F.2d 65, 71 n.10 (D.C. Cir. 1981) ("[M]ere ignorance of the law does not ordinarily toll the statute of limitations."). Rather, equitable tolling is appropriate "only in 'rare instances where— due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.'" *Head v. Wilson*, 792 F.3d 102, 111 (D.C. Cir. 2015) (quoting *Whiteside v. United States*, 775 F.3d 180, 184 (4th Cir. 2014)). No extraordinary circumstance beyond Young's control stood in his way. Instead, his mistake is a "garden variety claim of excusable neglect."[3] *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990).

Finally, Amicus lays the blame at the feet of the DCCA, arguing that "Young's confusion was likely compounded"

---

[3] It is of no moment that Young's mistake "caused no prejudice" to the SEC. Amicus's Opening Br. at 33. "Although absence of prejudice is a factor to be considered in determining whether the doctrine of equitable tolling should apply once a factor that might justify such tolling is identified, it is not an independent basis for invoking the doctrine and sanctioning deviations from established procedures." *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984). Because Young cannot identify a basis that might justify equitable tolling, we don't consider the absence of prejudice here.

when, prior to his filing deadline, he contacted the DCCA to obtain instructions on how to file his petition, and the DCCA failed to correct his misunderstanding about where to file it. Amicus Opening Br. at 32. This argument, too, lacks merit.

"[W]e have excused parties who were misled about the running of a limitations period, whether by an adversary's actions, by a government official's advice upon which they reasonably relied, or by inaccurate or ineffective notice from a government agency required to provide notice of the limitations period[.]" *Bowden v. United States*, 106 F.3d 433, 438 (D.C. Cir. 1997) (citations omitted). Even assuming Young told the DCCA's clerk's office that he wanted to seek review of an SEC order (a fact he does not allege), he does not claim that the DCCA affirmatively "misled" him in any way. *Id.* at 438; *see also Dyson v. D.C.*, 710 F.3d 415, 422 (D.C. Cir. 2013) (rejecting claim for equitable tolling because the appellant did not allege "that either the EEOC or the District of Columbia misled her as to her filing deadline"). Moreover, to the extent Amicus invokes the "unique circumstances" doctrine, that doctrine applies only where a party is "lulled into missing the deadline by a formal court order or ruling" and does not apply to "statements made by the clerk's office staff," *see Moore v. S.C. Labor Bd.*, 100 F.3d 162, 162, 164 (D.C. Cir. 1996), much less the clerk's office of another court without concurrent jurisdiction.

## III.

Because no extraordinary circumstances beyond Young's control prevented him from timely filing his petition for review, he is not entitled to equitable tolling, and we dismiss his petition.

*So ordered.*

WILLIAMS, *Senior Circuit Judge*, concurring in the judgment: Four statutes authorize a party in the position of Mr. Young to secure review of an adverse SEC order in the court of appeals where he resides, or in this court, by filing a petition in such court within 60 days. See Securities Act of 1933, § 9(a), 15 U.S.C. § 77i(a); Securities Exchange Act of 1934, § 25(a), 15 U.S.C. § 78y(a); Investment Company Act of 1940, § 43(a), 15 U.S.C. § 80a-42(a); Investment Advisers Act of 1940, § 213(a), 15 U.S.C. § 80b-13(a). It is undisputed that on the last possible day Mr. Young filed a petition—*not* in the United States Court of Appeals for the District of Columbia Circuit but in the District of Columbia Court of Appeals. He filed the next day in our court, one day late.

I believe that our decision in *New York Republican State Committee v. SEC*, 799 F.3d 1126 (D.C. Cir. 2015), correctly ruled that one of the four relevant statutes, 15 U.S.C. § 80b-13(a), did not create a jurisdictional bar precluding the exercise of equitable tolling. "We may equitably toll a statutory deadline unless Congress has shown its intent to withdraw our jurisdiction once a deadline is missed." *Id.* at 1134 (citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515–16 (2006), and *Menominee Indian Tribe v. United States*, 614 F.3d 519, 523–25 (D.C. Cir. 2010)).

The Court's decision in *Arbaugh* had created a "clear statement" rule to the effect that statutory requirements, including timing deadlines, were not to be deemed jurisdictional unless "the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional . . . But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." 546 U.S. at 515–16. Absent a clear statement to the contrary, filing deadlines

are "'quintessential claim-processing rules,' which 'seek to promote the orderly progress of litigation,' but do not deprive a court of authority to hear a case." *United States v. Kwai Fun Wong*, 575 U.S. 402, 410 (2015) (quoting *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011)).

The SEC's misplaced reliance on *Bowles v. Russell*, 551 U.S. 205 (2007), ignores that the holding there rests on a "century's worth of precedent and practice in American courts," *id.* at 209–10 n.2, treating an appeal from one Article III court to another as jurisdictional; "*Bowles* did not hold categorically that every deadline for seeking judicial review in civil litigation is jurisdictional," *Henderson*, 562 U.S. at 436. Although the Investment Advisers Act makes clear that this court has jurisdiction "[u]pon the filing of such petition," 15 U.S.C. § 80b-13(a), that language cannot be said to clearly make the sixty-day filing deadline jurisdictional. And the three statutes other than 15 U.S.C. § 80b-13(a), which employ similar language, provide no more linguistic basis for a court to dub them jurisdictional than does 15 U.S.C. § 80b-13(a).

Having found equitable tolling available in principle in *New York Republican State Committee*, however, we declined to find any reason to apply it; the filing was four years late and the plaintiff failed to show either diligence or any kind of extraordinary obstacle to timely filing.

But although *New York Republican State Committee* is rightly considered a holding that the statutory filing deadline in question was consistent with equitable tolling, there is a further obstacle, not invoked by the SEC in that case: Federal Rule of Appellate Procedure 26(b)(2) provides that the court may not extend the time to file

> a notice of appeal from or a petition to enjoin, set aside, suspend, modify, enforce, or otherwise review

an order of an administrative agency, board, commission, or officer of the United States, *unless specifically authorized by law*.

Fed. Rule App. Proc. 26(b)(2) (emphasis added). "In other words, Appellate Rule 26(b) says that the deadline for the precise type of filing at issue here may not be extended." *Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710, 715 (2019) (applying the parallel language of Rule 26(b)(1) to petitions for permission to appeal authorized by Federal Rule of Civil Procedure 23(f)). See also *Kern v. SEC*, 724 F. App'x 687, 688 (10th Cir. 2018) (per curiam) (holding that Rule 26(b)(2) bars tolling of time to file a petition for review of an SEC order under 15 U.S.C. §§ 77i, 78y(a)(1), 80b-13).

Amicus for Mr. Young argues that 28 U.S.C. § 1631 provides exactly the "specific[] authoriz[ation]" required by Rule 26(b)(2). But § 1631 allows transfers only from a court "as defined in section 610 of this title." Section 610, in turn, enumerates exclusively a set of *federal* courts, rendering § 1631 useless to Mr. Young and leaving no specific authorization of the sort required by Rule 26(b)(2).

Although I read the controlling materials as barring our application of equitable tolling, I'm by no means confident that I would deny such tolling if the avenue were open to us. Mr. Young was proceeding *pro se*; within the allowed 60 days he filed a petition for review in the local court carrying a name almost identical to that of this court, an identity that understandably "has led to immense confusion to this day." John G. Roberts, Jr., *What Makes the D.C. Circuit Different? A Historical View*, 92 Va. L. Rev. 375, 388 (2006). The nearness of Mr. Young's miss, both in time (one day) and the names of the courts, coupled with his pro se status, present a fairly compelling case for equitable tolling. But Rule 26(b)(2) appears to me to throw an insuperable roadblock in his way.