# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-20411

United States Court of Appeals
Fifth Circuit

**FILED**
October 29, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

ROBERT ALLEN STANFORD, also known as Sir Allen Stanford, also known as Allen Stanford

Defendant - Appellant

Appeals from the United States District Court
for the Southern District of Texas

Before BENAVIDES, CLEMENT and HIGGINSON, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

After a jury trial, Robert Allen Stanford was convicted of one count of conspiracy to commit wire fraud and mail fraud in violation of 18 U.S.C. §§ 1341, 1343, and 1349; four counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 2; five counts of mail fraud in violation of 18 U.S.C. §§ 1341 and 2; one count of conspiracy to obstruct a Securities and Exchange Commission ("SEC") investigation in violation of 18 U.S.C. §§ 1505 and 371; one count of obstruction of an SEC investigation in violation of 18 U.S.C. §§ 1505 and 2; and one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). On appeal, Stanford asserts ten issues: (1) that the district court lacked jurisdiction; (2) that the indictment was defective and was

No. 12-20411

constructively amended at trial; (3) that the district court erred in denying his request for continuance; (4) that simultaneous civil and criminal proceedings constituted double jeopardy; (5) that authorities seized certain evidence in violation of the Fourth Amendment; (6) that the trial court erred in instructions to the jury; (7) that his sentence was based on improper enhancements; (8) that the district court was not impartial and showed favoritism to the government; (9) that cumulative error denied him a fair trial; and (10) that the government failed to provide exculpatory evidence. We AFFIRM.

## BACKGROUND

After a failed fitness-club venture in Texas, Robert Allen Stanford eventually rebranded himself as a banker in the Caribbean, forming Guardian International Bank, Ltd., ("Guardian"), on the island of Montserrat. Guardian advertised certificates of deposit ("CDs") averaging higher returns than those offered by banks in the United States, and Guardian's marketing materials and annual reports assured its customers that the bank pursued sound, conservative investment strategies and subjected itself to rigorous independent audits. In 1990, however, Montserrat's Ministry of Finance and Economic Development notified Stanford of its intent to revoke Guardian's banking license, citing various regulatory violations. In response, Stanford relocated the bank to the nearby island of Antigua, renaming it Stanford International Bank, Ltd. ("SIB").

Like its predecessor, SIB offered higher-return CDs supported by detailed marketing materials and annual reports showing steady growth. Stanford then established the Stanford Group Company ("SGC"), a broker-dealer and investment advisor headquartered in Houston, Texas, to expand the SIB CD market into the United States. Stanford's financial empire grew

rapidly over the following years while Stanford spent lavishly, purchasing boats, mansions, and personal aircraft and sponsoring high-dollar cricket tournaments.

During the financial crisis of 2008, Stanford's investors sought CD redemptions in large numbers while new sales slowed down. SIB was unable to pay the redemptions. In February of 2009, a court-appointed receiver took control of Stanford's companies. At the time, SIB owed billions of dollars to its investors. As government authorities investigated Stanford's business, members of his inner circle provided detailed information outlining decades of fraud within the organization.

Jim Davis, SIB's chief financial officer, stated that the company's fraudulent practices stretched all the way back to the earliest days of the Guardian bank on Montserrat. Davis stated that he and Stanford actively misrepresented the financial picture of their company when inducing investors to purchase their CDs. Contrary to the company's marketing materials regarding secure, conservative investments, a substantial portion of investor funds were actually appropriated by Stanford himself, who used them to finance his personal business ventures and opulent lifestyle. Working together, Stanford and Davis manipulated annual reports to show fake profit numbers to investors. In fact, Stanford sat atop a massive Ponzi scheme, using the funds from recent CD sales to pay investors holding matured certificates.[1]

Stanford also used investor funds to solidify his political position in Antigua, making loans to the government and paying bribes to its financial regulator, Leroy King. Antigua, in return, granted Stanford the title of "Sir

---

[1] Stanford questioned the use of this term at trial, but in the Fifth Circuit, a Ponzi scheme is one where the "swindler uses money from later victims to pay earlier victims," which is the essence of Stanford's CD business. *United States v. Murray*, 648 F.3d 251, 256 (5th Cir. 2011).

Allen Stanford." Over a period of 16 years, Stanford employed a single Antiguan auditor to falsely certify the bank's financial records. Stanford's corruption of Antiguan officials also allowed him to impede SEC scrutiny of his organization, as King shared confidential SEC communications with him regarding potential investigative activities.

By 2008, Stanford was bilking approximately $1 million dollars per day from investors to finance his personal endeavors while simultaneously providing false assurances regarding the strength and solvency of the organization. Stanford's bank's inability to repay its investors in late 2008 and early 2009 promptly led to the collapse and exposure of his fraudulent financial empire.

Prosecutors filed the original indictment on June 18, 2009. In September 2009, Stanford was beaten by other inmates in the detention facility, sustaining severe injuries. He was subsequently deemed incompetent to stand trial and was admitted to a medical center for treatment and evaluation. While Stanford was in the treatment facility, prosecutors filed a superseding indictment on May 4, 2011. Stanford completed his treatment in November and the district court deemed him competent after a hearing in late December. Following a seven-week trial, a jury convicted Stanford on 13 of 14 counts and the district court sentenced him to 110 years in prison. He now appeals pro se.

## DISCUSSION

I. Objection to jurisdiction

Stanford first asserts that the SEC did not have regulatory authority over SIB, which is an offshore institution located on the island of Antigua. This assertion forms the basis for Stanford's claim that the district court lacked jurisdiction over the criminal case against him. We review jurisdictional questions de novo. *United States v. Traxler*, 764 F.3d 486, 488 (5th Cir. 2014).

It is unnecessary to determine whether the SEC had regulatory authority over SIB, as neither the SEC nor SIB are parties to this criminal case. The district court had jurisdiction over Stanford's case pursuant to 18 U.S.C. § 3231. Stanford does not offer any reason why the district court would not have jurisdiction over him personally for the various federal criminal offenses with which he was charged. As a result, his objection fails.

II. Sufficiency of the Indictment

Stanford alleges several defects in the superseding indictment, raising these issues for the first time on appeal. Where a defendant raises new challenges to the sufficiency of the indictment on appeal, we review for plain error. *United States v. Fuchs*, 467 F.3d 889, 900 (5th Cir. 2006). First, Stanford states that the "[d]ates charged for the alleged fraudulent scheme in all Counts of the Indictment was [sic] not supported by the dates admitted in open court by the Government," resulting in a "constructive amendment"[2] of the indictment at trial. We disagree.

A constructive amendment occurs when the government changes its theory at trial, allowing the jury to convict on a broader basis than that alleged in the indictment, or when the government proves an essential element of the crime on an alternate basis authorized by the statute but not charged in the indictment. *United States v. Girod*, 646 F.3d 304, 316 (5th Cir. 2011). An allegation as to the time of the offense is not an essential element. *Id.* Here, the fourteen counts of the superseding indictment alleged offenses between "in or about 1990" and "in or about February 2010." Where the prosecution uses the "on or about" designation, the indictment is sufficient "if a date reasonably near is established." *United States v. Valdez*, 453 F.3d 252, 260 (5th Cir. 2006).

---

[2] As with a failure to challenge the sufficiency of an indictment, where a defendant alleges a constructive amendment for the first time on appeal, we review for plain error. *United States v. Broadnax*, 601 F.3d 336, 340 (5th Cir. 2010).

No. 12-20411

The indictment notified Stanford of the precise nature and timeframe of each conspiracy and provided specific descriptions of the overt acts that furthered each conspiracy. Furthermore, counts two through six—relating to wire fraud—and counts seven through eleven—relating to mail fraud—alleged the approximate actual dates on which the offenses occurred and provided a contextual description of each illegal transaction. Matching documentary evidence proved these transactions at trial. The combination of approximate dates and specific contextual information for each allegation provided sufficient notice to Stanford, who has not demonstrated that he was "surprised or prejudiced in any way" by the dates in the indictment. *See Girod*, 646 F.3d at 317.

Next, Stanford asserts that a "constructive amendment" occurred with respect to count four (wire fraud) when the government introduced evidence at trial confirming that the transaction in question involved a transfer of $700,000 of investor funds from Houston, Texas, to an SIB account in Canada, inconsistent with count four's particularized description of a Houston-to-Houston transfer.[3] Stanford did not raise this argument during trial. Thus, we review the issue for plain error. *See United States v. Scher*, 601 F.3d 408, 411 (5th Cir. 2010). On plain-error review, we will reverse only if "(1) there is an error, (2) that is clear or obvious, and (3) that affects [the defendant's] substantial rights." *United States v. Ferguson*, 211 F.3d 878, 886 (5th Cir. 2000). Even if these conditions are met, the decision whether to correct a forfeited error remains soundly within our discretion; and we exercise that discretion only if an error "seriously affect[s] the fairness, integrity, or public

---

[3] In the superseding indictment, count four describes a "[w]ire transmission of approximately $700,000 from SGC account #4183 located in Houston, Texas, to an SIB account located in Houston, Texas, regarding Investor WJ's purchase of SIB CDs."

6

reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 735-36 (1993) (citation omitted).

A constructive amendment occurs "when an essential element of the offense is effectively modified during trial"; furthermore, "[t]he particular predicate for jurisdiction is an essential element of any federal offense." *United States v. Young*, 730 F.2d 221, 224 (5th Cir. 1984). The elements of wire fraud under 18 U.S.C. § 1343 are "(1) a scheme to defraud and (2) the use of, or causing the use of, wire communications in furtherance of the scheme." *United States v. Simpson*, 741 F.3d 539, 547-48 (5th Cir. 2014). The particular predicate for jurisdiction for wire fraud requires a "communication in interstate or foreign commerce." 18 U.S.C. § 1343. The statute does not apply to purely intrastate communication. *See Smith v. Ayres*, 845 F.2d 1360, 1366 (5th Cir. 1988).

As we have done in similar cases, here we assume without deciding that the first three requirements of plain error are met. *See United States v. McGilberry*, 480 F.3d 326, 331-32 (5th Cir. 2007). Thus, we turn directly to the fourth prong and ask whether any error seriously affected "the fairness, integrity or public reputation of judicial proceedings." *Id.* at 332 (citation omitted). We conclude it did not. The transmission that provided the basis of Stanford's conviction on count four "could have properly been charged in the indictment and is prohibited by statute." *United States v. Daniels*, 252 F.3d 411, 414 (5th Cir. 2001); *see United States v. Reyes*, 102 F.3d 1361, 1365 (5th Cir. 1996) (declining to exercise discretion to correct a constructive amendment, under plain error review, in part because the offense upon which the jury was charged could have been charged in the indictment). In addition, count four identifies Stanford's fraudulent conduct as a wire transmission and identifies the date of its occurrence, the dollar amount in question, and the

specific account number and financial institution from which the funds were taken. Thus, he cannot creditably claim that the indictment did not provide sufficient detail about the transmission to put him on notice of what he would be required to defend against. We conclude, therefore, that to the extent that the government's evidence and argument concerning a Houston-to-Canada transaction amended the indictment, that error did not seriously affect the fairness, integrity, or public reputation of the judicial proceedings. Hence we decline to exercise our discretion to correct the alleged error.

In a similar vein, Stanford asserts that, with respect to the mail fraud counts, the superseding indictment lacked particularity because the counts "did not include any specific and identifiable characteristics other than mere dates." Each count—in addition to the date—also identified the place of origin, commercial interstate carrier, and place of delivery for each package. The counts thus were neither "vague" nor "indefinite." *See Simpson*, 741 F.3d at 548. Stanford's challenge fails under a plain error review.

Stanford next challenges the superseding indictment on grounds of multiplicity and duplicity. Stanford did not raise these objections before trial, as required by Federal Rule of Criminal Procedure 12(b)(3), and so they are forfeited. *See United States v. Creech*, 408 F.3d 264, 270 (5th Cir. 2005) (duplicity); *United States v. Dixon*, 273 F.3d 636, 642 (5th Cir. 2001) (multiplicity).

Finally, Stanford challenges the superseding indictment's "incorporation by reference" of allegations in the original indictment. Because Stanford did not raise this challenge before the district court, we review for plain error. *Fuchs*, 467 F.3d at 900. Allegations made in one count may be incorporated by reference in another count. Fed. R. Crim P. 7(c)(1). Such incorporation must be express. *United States v. Hajecate*, 683 F.2d 894, 901 (5th Cir. 1982). Here,

paragraph 38i. of the superseding indictment states that "[t]he acts alleged in Count Two through Count 18 of the Indictment are re-alleged and incorporated herein as additional overt acts in furtherance of the conspiracy and to achieve the objects and purpose thereof." Because the incorporation is expressly stated, the indictment is not defective and Stanford's challenge fails under plain error review.

III.  Denial of Continuance

Stanford asserts that the district court erred in denying his motion for continuance and related motion for reconsideration. District courts have broad discretion whether to grant continuances and we review only for an abuse of discretion resulting in serious prejudice to the defendant. *United States v. German*, 486 F.3d 849, 854 (5th Cir. 2007). When reviewing the denial of a continuance, we consider the totality of the circumstances. *United States v. Stalnaker*, 571 F.3d 428, 439 (5th Cir. 2009).

Responding to Stanford's motions, the district court noted that Stanford was represented by an extensive legal team throughout the two-and-one-half year period preceding the trial; that the government maintained an open discovery file accessible by the defense team from the inception of the case; and that Stanford was medically competent to assist in his defense at least two-and-one-half months before his trial, if not earlier. The district court also appropriately considered factors such as escalating expenses and the interest of the public and the victims in efficient resolution of the case. In sum, the record clearly establishes that Stanford was well-represented by a competent and experienced defense team that had ample opportunity to consult on the case, review all documentary evidence, and prepare for trial. As a result, under the totality of the circumstances, we find that the district court neither abused

its discretion nor prejudiced Stanford in denying his motion for continuance and associated motion for reconsideration.

IV.  Double Jeopardy

Stanford asserts that the simultaneous civil and criminal cases based on the same underlying events subjected him to double jeopardy. At trial, the district court denied his motion on these grounds. We review denials of motions to dismiss on double jeopardy grounds de novo. *See United States v. Jones*, 733 F.3d 574, 579-80 (5th Cir. 2013). The Double Jeopardy Clause protects against the imposition of "multiple criminal punishments for the same offense" and only when "such occurs in successive proceedings." *Hudson v. United States*, 522 U.S. 93, 99 (1997). Here, there are no successive proceedings to speak of, as the SEC's civil action against Stanford was stayed until after resolution of the criminal case. *SEC v. Stanford*, 3:09-CV-298 (N.D. Tex.) (dkt entry #948). Even so, Stanford argues that the receiver's sale and liquidation of various assets before trial constituted "punishment" for purposes of double jeopardy. This court has held that a receiver is a "private, non-governmental entity, and is not the Government for the purpose of the Double Jeopardy Clause." *United States v. Beszborn*, 21 F.3d 62, 68 (5th Cir. 1994). There is no evidence that the receiver performed any functions other than those necessary to manage Stanford's failed financial institutions. As a result, the receiver is a private individual, and the Double Jeopardy Clause "does not apply to actions involving private individuals." *Id.* at 67.

V. Denial of Suppression Motion

Stanford next asserts that the district court erred in denying his motion to suppress evidence under the Fourth Amendment. On appeal of such a denial, we view the evidence in the light most favorable to the government, and we review factual findings for clear error and legal conclusions de novo. *See*

*United States v. Stevens*, 487 F.3d 232, 238 (5th Cir. 2007). Stanford argues that the receivership order issued by the Northern District of Texas in a separate civil proceeding was used as a general warrant or writ of assistance by law enforcement and that the receiver was effectively an agent of government investigators, employed to circumvent the Fourth Amendment. The mere fact of simultaneous civil and criminal proceedings is insufficient to establish an impermissible commingling of the two. *See United States v. Posada Carriles*, 541 F.3d 344, 354 (5th Cir. 2008). Rather, we have held that there must be an element of impropriety such as "[d]eception as to the purpose of the investigation, . . . using otherwise meaningless civil proceedings as a pretext for acquiring evidence for a criminal prosecution, [or] taking advantage of a person who does not have counsel," to invalidate the prosecution. *United States v. Setser*, 568 F.3d 482, 493 (5th Cir. 2009). Other than the receiver's routine provision of materials and documents to government investigators upon request, Stanford fails to offer any evidence of improper concerted action between the receiver and the government, and a receiver in proper possession of property may turn it over to law enforcement without a warrant. *United States v. Gray*, 751 F.2d 733, 737 (5th Cir. 1985). Therefore, we find no error in the district court's denial of the suppression motion.

VI.  Responses to Jury Notes

Stanford asserts that the district court erred when it provided a definition of the word "scheme" to the jury.  A district court's response to a jury note is considered a jury instruction. *United States v. Ramos-Cardenas*, 524 F.3d 600, 610 (5th Cir. 2008). Where defense objected to the instruction at trial, we review for abuse of discretion, subject to a harmless-error analysis. *Id.* Here, the jury requested a definition of the word "scheme" in the context of "scheme to defraud" included in the pattern jury instructions. The government

proposed "design or plan," while the defense proposed "design or plan formed to accomplish some purpose." The district court provided the definition "design or plan" over defense objection. The district court had previously defined "scheme to defraud" to the jury as "any scheme to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises." As a result, the district court's jury note response effectively defined "scheme to defraud" as "any [design or plan] to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises." The district court's instructions will be affirmed on appeal "if the charge in its entirety presents the jury with a reasonably accurate picture of the law." *United States v. Jones*, 132 F.3d 232, 243 (5th Cir. 1998). The definition given by the district court gives an accurate picture of the law, and therefore we find no abuse of discretion or error. On appeal, Stanford raises an additional argument, suggesting that the word "scheme" itself was unfairly prejudicial. This argument is without merit, as the word "scheme" is written into the statutory definitions of the charged offenses and must necessarily be presented to the jury through evidence, instruction, and argument.

Stanford also asserts that the court erred in defining "CDO" as a "collateralized debt obligation." Jury Note 3, submitted to the court, stated that "Government Exhibit 1149 Item Number 3 refers to 'CDO' products. What is the meaning of 'CDO'?" The government proposed responding with "collateralized debt obligation," a simple recitation of the words within the acronym, while the defense proposed responding with "collaterized debt obligations, like sub-prime loans." The district court, noting the defense's objection, provided the definition tendered by the government. Stanford claims that the district court's instruction to the jury was inadequate and thereby violated his Sixth Amendment right to a fair trial. We disagree. Applying the

*Jones* standard above, we find neither abuse of discretion nor error where the court responded to the jury note with an accurate definition of the acronym in question.

VII.  Application of Sentencing Enhancements

At trial, Stanford objected to the Presentencing Report ("PSR") based on general factual disputes. The district court's application of the guidelines is reviewed de novo, and its factual findings are reviewed for clear error. *See United States v. Umawa Oke Imo*, 739 F.3d 226, 240 (5th Cir. 2014). Factual findings need only be found by a preponderance of the evidence and plausible in light of the entire record. *See United States v. Simpson*, 741 F.3d 539, 556-57 (5th Cir. 2014).

Stanford's objections to the enhancements are based on his claims that they were not sufficiently demonstrated by the evidence introduced at trial. Specifically, Stanford claims that the evidence failed to establish (1) an amount of loss more than $400 million; (2) that he endangered the solvency of a financial institution; (3) that there were 250 or more victims; (4) that he relocated his scheme to evade regulatory authorities; or (5) that he abused a position of trust. The record includes ample testimonial and documentary evidence to establish each of these facts. First, the receiver provided financial records showing that SIB owed $5.9 billion to its investors, plus interest. Second, this debt substantially jeopardized the safety and soundness of SIB, which became insolvent. Third, at the time of trial the government had identified 672 unique victims of the fraud. Fourth, testimony showed that Stanford relocated his scheme from Montserrat to Antigua to avoid regulators. Fifth, Stanford, the chief executive officer of SIB, used his position to defraud SIB and its investors to finance his personal endeavors, bribe officials, and obstruct investigations. In short, sufficient evidence supports each of the

No.  12-20411

enhancements applied by the court, and we find no clear error in the factual findings of the court or error in interpretation of the guidelines. Finally, at sentencing, Stanford objected to his sentence on the basis of substantive and procedural due process and the Eighth Amendment. He renews that objection now, arguing that the district court violated due process and his right to a fair trial by "piling on the points." Stanford fails to cite specific facts or authority in support of his argument. In any case, the court's sentence of 110 years fell within the 230-year sentence authorized by the sentencing guidelines and is therefore presumed reasonable. *See United States v. Campos-Maldonado*, 531 F.3d 337, 338 (5th Cir. 2008). Stanford has failed to overcome this presumption and we see no error in the district court's exercise of discretion in determining an appropriate sentence.

For the first time on appeal, Stanford raises new objections to the application of the sentencing enhancements in his case based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 133 S. Ct. 2151 (2013), both of which relate to increases in statutory penalties. Because Stanford failed to raise this issue before the district court, we review only for plain error. *United States v. Wallace*, 759 F.3d 486, 497 (5th Cir. 2014). In *Apprendi*, the Supreme court held that facts which would increase the statutory maximum penalty for an offense must be submitted to the jury and proved beyond a reasonable doubt. 530 U.S. at 490. In *Alleyne*, the Supreme Court logically extended this holding to facts which would increase mandatory minimum sentences. 133 S. Ct. at 2155. Both are inapplicable to the present case. None of the offenses here carried mandatory minimums, nor did the district court impose any punishments in excess of the statutory maximums. Rather, the district court accepted the PSR recommendation and adjudged a sentence within the statutorily authorized range. Neither *Apprendi* nor

14

*Alleyne* applies to sentencing guidelines. *See United States v. Hinojosa*, 749 F.3d 407, 412-13 (5th Cir. 2014). Therefore, his argument is without merit and we find no error.

VIII.  Allegation of Partiality

Stanford claims that he was deprived of both due process under the Fifth Amendment and a fair trial under the Sixth Amendment because the district court was partial to the government throughout the trial process. More specifically, Stanford claims that the district court disqualified his counsel of choice; improperly deemed him competent to stand trial; and made numerous adverse rulings against him and in favor of the government.

Stanford first claims that he was denied his "counsel of choice" to represent him in his criminal case. We review the district court's decision to disallow substitute counsel for an abuse of discretion. *United States v. Jones*, 733 F.3d 574, 587 (5th Cir. 2013). In 2009, Stanford sought access to the proceeds of a Directors and Officers Liability Insurance Policy held by his company ("D&O Policy"), in order to fund his defense. At the time, the D&O Policy was subject to the asset freeze imposed by the Northern District of Texas, which had jurisdiction over the civil proceedings. As a result, Stanford made a motion to permit Michael Sydow ("Sydow") to appear in the criminal case "for the limited purpose of resolving whether Mr. Stanford will be granted access to monies to pay for his legal fees and expenses." The district court denied Stanford's motion and this court denied his petition for a writ of mandamus because the D&O Policy itself was the subject of simultaneous civil proceedings. *See generally Pendergest-Holt v. Certain Underwriters*, 600 F.3d 562 (5th Cir. 2010). Therefore, we find no abuse of discretion in the denial of Sydow's limited appearance in the criminal case because the same issue was already being litigated in a different forum.

Stanford also claims he was denied his counsel of choice when a separate attorney, Stephen Cochell ("Cochell"), was denied "in-person access" to him at the detention center. In fact, Cochell was representing Stanford in a civil case, rather than the criminal case, and the district court found that his public statements about Stanford might impact the criminal prosecution and impending jury trial. Therefore, we find no abuse of discretion in the court's order to preclude Cochell from in-person access to Stanford prior to the criminal trial, because Cochell was not part of the criminal defense team.

Stanford next challenges the district court's order finding him competent to stand trial. The standard applied on review is whether the district court's finding of competence was "clearly arbitrary or unwarranted." *United States v. Dockins*, 986 F.2d 888, 890 (5th Cir. 1993). Here, the district court initially found that Stanford was unable to effectively and rationally assist his attorneys and ordered him committed to the custody of the Attorney General to undergo medical treatment on January 26, 2011. Stanford's condition at the time primarily arose from head injuries he sustained in a prison assault in September 2009 and his subsequent overmedication. Stanford entered treatment at the Bureau of Prisons Federal Medical Center in Butner, North Carolina ("FMC Butner") on February 18, 2011. On November 4, 2011, after eight months of evaluation and treatment, the Mental Health Department at FMC Butner deemed Stanford competent to stand trial. In late December 2011, the district court held a comprehensive competency hearing lasting two-and-one-half days. After reviewing all of the medical evaluations submitted by both parties, weighing the credibility and reliability of all expert testimony presented, and considering all other testimony and arguments, the district court found that FMC Butner successfully withdrew Stanford from his prescription drug dependence; that Stanford possessed the necessary cognitive

ability to assist his counsel; and that reliable scientific evidence demonstrated that Stanford was feigning retrograde amnesia. The district court further highlighted the extensive and comprehensive period of evaluation conducted by the impartial staff of FMC Butner over a period of eight months, prior to their determination of competency and release. Finally, the district court noted that throughout the seven-week-long trial Stanford was attentive, fully engaged with counsel, and actively made notes and reviewed exhibits, further demonstrating his competency to stand trial.

Upon review, we first note that the initial determination of incompetency was based in large part on Stanford's prescription-medication dependence, from which he was successfully withdrawn before December 2011. Second, before the district court hearing, Stanford was deemed competent by the medical staff of FMC Butner, who had engaged in extensive observation and treatment of Stanford over an eight-month period. Finally, Stanford actively participated in an intensive, seven-week long trial without any indication of cognitive difficulty. In conclusion, we do not find that the district court's determination was arbitrary or unwarranted.

Stanford concludes his challenge to the impartiality of the district court by alleging favoritism towards the government on various jury charges and evidentiary rulings. Stanford's objections fail for inadequate briefing, lacking citations to authority and the record and failing to explain why relief is merited. *See Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993). As we have stated previously, "we liberally construe the briefs of pro se appellants" but we "also require that arguments must be briefed to be preserved." *Id.* For example, Stanford objects to the district court's rulings on jury charges but does not identify which jury charges were improper or why. Stanford further claims he was precluded from offering various rebuttal evidence but does not identify

where in the record such adverse rulings occurred. Stanford concludes this portion of his argument by stating that "[i]n short, through the court's rulings in Motions in Limine and its later rulings, the Government was permitted to conceal from the jurors, the fact that SIB was a foreign bank . . . ." Yet the trial record reveals that the government freely revealed this fact to the jury. Based on all of the foregoing, we find no evidence that the district court was partial to the government in derogation of Stanford's right to a fair trial under the Constitution.

IX.  Cumulative Error

Stanford concludes by asserting the cumulative error doctrine, "[a]dopting herein all arguments, facts and authority within this brief." As Stanford has failed to explain or identify any specific errors on which his argument is based, his claim is waived for inadequate briefing. *Yohey*, 985 F.2d at 225.

X.  *Brady* Claims

In various portions of his brief, Stanford asserts that the government failed to provide him with exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Specifically, Stanford states that the "sheer quantity of dumped data [provided by the government] could not be fully assessed by the Defense under the circumstances." We have previously rejected such "open file" *Brady* claims where the government provided the defense with an electronic and searchable database of records, absent some showing that the government acted in bad faith or used the file to obscure exculpatory material. *See United States v. Skilling*, 554 F.3d 529, 577 (5th Cir. 2009), *vacated on other grounds*, 561 U.S. 358 (2010). Stanford has provided no other information in support of his claim that could provide the basis for a *Brady* violation.

No. 12-20411

## XI. Conclusion

For the foregoing reasons, we AFFIRM.