GUIDRY, J. |aA state agency appeals a trial court’s judgment certifying as a class action the plaintiffs’ negligence claims premised on allegations that the agency’s failure to properly perform its regulatory duties contributed to the injuries they sustained as a result of a -fraudulent investment scheme perpetrated by an individual affiliated with 'a regulated entity. FACTS AJH) PROCEDURAL HISTORY Pursuant to a federal securities action initiated by the United States Securities and Exchange Commission (“SEC”), the United States District Court for the Northern District of Texas took possession of the “assets, monies, securities, properties, real and personal, tangible and intangible, of whatever kind and description, wherever located” of Stanford Internation-' al Bank Limited (SIB), Robert Allen Stanford, and other related defendants[1] and issued a temporary restraining order freezing their assets on February 16, 2009.[2] The Eastern Caribbean Supreme Court, in the High Court of Justice of Antigua and. Barbuda later liquidated and dissolved SIB, a foreign bank chartered in Antigua, based on the finding that SIB had acted in contravention of the International Business Corporations Act, Cap. 222 of the laws of Antigua and Barbuda. The nature and extent of Mr. Stanford’s conduct that led to the aforementioned court actions is detailed in the following account from Mr. Stanford’s criminal prosecution: After a failed fitness-club venture in Texas, Robert Allen Stanford eventually rebranded himself as a banker in the Caribbean, forming Guardian International Bank, Ltd., (“Guardian”), on the island of Montserrat. '■ Guardian advertised certificates of deposit |4(“CDs”)[3] averaging higher returns than those offered by banks in the United States, and Guardian’s marketing materials and annual-reports assured its customers that the bank pursued sound, conservative investment strategies and subjected itself to rigorous independent audits. In 1990, however, Montserrat’s Ministry of Finance and Economic Development notified Stanford of its intent to revoke Guardian’s banking license, citing various regulatory violations. In response, Stanford relocated the bank to the- nearby island of Antigua,' renaming it Stanford International Bank, Ltd. (“SIB”). Like its predecessor, SIB • offered higher-return CDs supported by detailed marketing materials and annual reports showing steady growth. Stanford then established the Stanford Group Company (“SGC”), a broker-dealer and investment advisor headquartered in Houston, Texas, to expand the SIB CD market into the United States. Stanford’s financial empire grew rapidly over the following years while Stanford spent lavishly, purchasing boats, mansions, and personal aircraft and sponsoring high-dollar cricket tournaments. During the financial crisis of 2008, Stanford’s investors sought CD redemp-tions in large numbers while new sales slowed down, SIB was unable to pay the redemptions, In February of 2009, a court-appointed receiver took control of Stanford’s companies. At the time, SIB owed billions of dollars to its investors. [[Image here]] , By 2008, Stanford was bilking approximately $1 million dollars per day from investors to.fin.ance his personal endeavors while simultaneously providing false assurances regarding the strength and solvency of the organization. Stanford’s bank’s inability to repay its investors in late 2008 and early 2009 promptly led to the collapse and exposure of his fraudulent financial empire. United States v. Stanford, 805 F.3d 557, 563-64 (5th Cir. 2015), cert. denied, — U.S. -, 137 S.Ct. 491, 196 L.Ed.2d 402 (2016). On August 20, 2009, eighty-six individuals, who claimed to have heavily invested in SIB CDs and consequently suffered substantial financial losses, filed a class action lawsuit against the Stanford Trust Company (“Stanford Trust”), SEI Investments Company (“SEI”),[4] and the State of Louisiana, Office of Financial | ^Institutions («OFI”) for alleged breaches of fiduciary, statutory, and contractual duties. In the petition, plaintiffs claimed that investment advisors, working as agents for Stanford Trust, induced the plaintiffs to invest either directly in SIB CDs held in trust with Stanford Trust as the trustee or to designate Stanford Trust as the custodian of their IRA accounts, whereby Stanford Trust converted the funds in the IRA accounts to SIB CDs. With respect to the OFI, plaintiffs asserted that the agency wrongly allowed the SIB CDs to be marketed and sold to Stanford Trust without proper examination of the risk profile of the CDs or assurance that .such information was being disclosed to investors. Moreover, despite examinations- that eventually caused the OFI to first-restrict the sales of SIB CDs, and later order the removal of SIB CDs from Stanford Trust, plaintiffs alleged that the OFI failed to disclose the perceived risks that prompted its actions to investors who purchased or renewed SIB CDs from January T, 2007 to February 13, 2009, or to suspend the salé of the CDs in the state after discovering the risk associated with the CDs. With respect to the other two defendants, SEI and the Stanford Trust, the plaintiffs noted that the entities had entered into an agreement whereby SEI would perform the trust functions of accounting and reporting of investments in SIB CDs; however, the plaintiffs claimed that the companies failed to properly determine and report' the value of the SIB CDs, and in doing so, engaged in unfair trade practices and committed violations of Louisiana securities law.[5] In response to the plaintiffs’ petition, the OFI initially filed exceptions urging the objections of prematurity and no cause of action, which were overruled by the trial court. The OFI then filed an answer generally denying liability. The OFI also filed a writ application seeking supervisory review of the trial court’s ^overruling of its exceptions, which was subsequently denied by this court. Lillie v. Stanford Trust Company, 10-0075 (La. App. 1st Cir. 4/12/10) (unpublished writ action). Similarly, SEI filed a peremptory exception urging the objection of no cause of action as to the plaintiffs’ claims of unfair trade practices and violations of Louisiana securities law. The trial court sustained the exception as to the plaintiffs’ claims of unfair trade practices, but overruled the exception as to the plaintiffs’ claims premised on Louisiana securities law. SEI then answered the plaintiffs’ petitions to generally deny liability as well. On March 5, 2010, the plaintiffs filed a motion for class certification and to conduct discovery on class certification issues. The trial court granted the motion to conduct discovery and scheduled the motion for class certification for a contradictory hearing. Thereafter, a motion was filed to voluntarily dismiss Stanford Trust from the litigation without prejudice, which the trial court granted on March 24, 2010. Hence, the' matter of class certification proceeded against SEI and the OFI only. At the class certification hearing, the plaintiffs offered the testimony of five of the named plaintiffs as potential class representatives. SEI introduced into evidence the depositions of two of those plaintiffs, as well as twelve other plaintiffs.[6] Additionally, the trial court heard testimony from the president of the SEI Private Trust Company, Al Delpizzo, and Harry Stansbury, who was offered as an expert witness on Louisiana Securities Law. The trial court also considered other documentary evidence offered by the parties. Following the two-day hearing, the trial court took the matter under advisement, and for reasons pronounced on December 5, 2012, the trial court certified the plaintiffs’ lawsuit against SEI and the OFI as a class action consisting of: (1) persons who purchased SIB CDs inJjLouisiana between January 1, 2007 and February 13, 2009; (2) persons who renewed any SIB CD in Louisiana between January 1, 2007 and February 13, 2009; and (3) persons for whom Stanford Trust purchased SIB CDs in Louisiana between January 1, 2007 and February 13, 2009. The trial court later signed a judgment and an amended judgment in conformity with its reasons on December 17, 2012 and January 16, 2013, respectively.[7] SEI and the OFI both filed motions to devolutively appeal the December 17, 2012 judgment, as amended, which were granted by the trial court on February 5 and 8, 2013, respectively.[8] However, on February 1, 2013, the plaintiffs filed a “First Amended and Restated Class Action Petition,” wherein three new plaintiffs were named and seven insurance companies, as insurers of SEI, were added as defendants to the lawsuit.[9] Subsequently, six of the newly added insurance defendants filed a motion to remove the lawsuit to the United States District Court for the Middle District of Louisiana. Following the removal, the plaintiffs filed a motion to remand the entire action to state court. The OFI filed a separate motion with the federal court to sever the claims against it and to remand those claims to state court, 'citing its immunity from suit in federal court under the Eleventh Amendment as the basis for remand. See Lillie v. Stanford Trust Company, CIV.A. 13-150-JJB-RLB, 2013 WL 5524865, at *1-2 (M.D. La. Oct. 3, 2013). Before the United States District Court for the Middle District of Louisiana could act on the motions filed by the plaintiffs and the OFI, the United States ^Judicial Panel on Multidistrict Litigation (“MDL Panel”) issued an order transferring the plaintiffs’ claims against SEI and its insurers from the Middle District of Louisiana to the United States District Court for the Northern District of Texas, where other Stanford-related securities litigation was pending. As' for the plaintiffs’ claims against the OFI, the MDL Panel separated those claims and maintained them in the United States District Court for the Middle District of Louisiana, because it determined that those claims focused on “factual issues unique to OFI, with respect to the conduct of its examiners and nature and scope of its regulatory authority.” Lab .lie, 2013 WL 5524865, at *2. As a consequence of the actions of the MDL panel, the United States District Court for the Middle District of Louisiana denied the OFI’s request to sever as moot, but granted the OFI’s motion to remand. Lillie, 2013 WL 5524865, at *1, Consequently, SEI has abandoned its devolutive appeal of the instant class certification judgment and is not a party to the appeal pending before us. However, the plaintiffs have filed an answer to the OFI’s appeal seeking review of the trial court’s decision to exclude from the class those persons who made a decision not to redeem their SIB CDs prior to maturity between January 1, 2007 and February 13, 2009. ' ISSUES PRESENTED FOR REVIEW On appeal, the OFI raises the following issues regarding the trial court’s class certification determinations: ' 1. The Plaintiffs failed to set forth any allegation in any pleading concerning the elements required to prove the application of fraud on the market theory and Plaintiffs produced no evidence at the class certification hearing to support the trial courts reliance on the presumption created by that theory. Thus[,] the question for review is whether it was proper for the trial court to find that issues common to the class predominate over individual issues? 2. In a case where plaintiffs set forth vastly different allegations covering different time periods, against three separate and distinct original defendants, considering different theoñes of law (as set forth |9in Counts One-Seven of the Original Petition) is it proper for the court to find that a common nucleus of operative facts existed? 3. In a case where the only evidence submittéd by plaintiffs to support a claim of numerosity consists of ... several lists of SIB CD account holders and thus has no relevance to the plaintiffs[’] proposed class definition set forth in the Original Petition, is it proper for the court to merely ... conclude that there were a large number of plaintiffs and thus find that the numerosity element has been satisfied? 4. In .a case where several plaintiffs testified that they were also plaintiffs in Stanford related cases, and that several plaintiffs testified that they would proceed with their claims whether or not the class was certified, that they had substantial monetary claims, (some exceeding a million dollars), was it proper for the trial court to find that the elements of predominance and superiority required under La[.] C.C.P. Art. 591B (3)were satisfied? APPLICABLE LAW A class action is “a nontraditional litigation procedure that permits a representative with' typical claims to sue or defend on behalf of, and stand in judgment for, a cla'ss of similarly situated persons when the question Is one of common interest to persons so numerous as to make it impracticable to bring them all before the court.” Baker v. PHC-Minden, L.P., 14-2243, p. 10 (La. 5/5/15), 167 So.3d 528, 537. In Louisiana, the threshold prerequisites for class action certification are generally found in La. C.C.P. art. 591(A), which provides: One or more members of a class may sue or be sued as representative parties on behalf of all, only if: (1) The class is so numerous that join-der of all members is impracticable. (2) There are questions of law or fact common to the class. (3) The claims or defenses of the representative parties are typical of the claims or defenses of the class. (4) The representative parties will fairly and adequately protect the interests of the class. (5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case. This prerequisite shall not be satisfied if it is necessary for the court to inquire into the merits of each potential class member’s cause of action to determine whether an individual- falls within the defined class. Moreover, La. C.C.P. art. 591(B) lists additional criteria, one of which must also be met, depending on the type of class action sought by the parties. The 1 incr iter ion applicable to this case is found in La. C.C.P. art. 591(B)(3), which provides the additional requirement that: The court finds' that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a-class action is superior to other available -methods for the fair and efficient adjudication' of the controversy. The matters pertinent to these findings include: ' ' (a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions; (b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) The desirability or undesirability of concentrating the litigation in the particular forum; , (d) The difficulties likely to be encountered in the management of a class action; (e) The practical ability of individual class members to pursue their claims without class certification; (f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation!.] In reviewing a judgment on class certification, the district court’s factual findings are subject to the manifest error standard, while the court’s ultimate decision regarding whether to certify the class is reviewed under the abuse of discretion standard. Whether the district court applied the correct legal standard in determining whether to certify the class is reviewed de novo. Price v. Martin, 11-0853, pp. 7-8 (La. 12/6/11), 79 So.3d 960, 967. DISCUSSION In the first issue raised, the OFI contends that the trial court improperly relied on the fraud on the market theory[10] to find that issues common to the. class predominate over individual issues pursuant to La. C.C.P. art. 591(B)(3). However, a review of the trial court’s reasons for judgment show that the trial |ncourt neither relied on nor applied that theory in determining class certification. Rather, in its reasons for judgment, the trial court first recounts that “[w]hen called upon to decide complicated issues such as this, I generally try to familiarize myself with the applicable law. before reviewing the argument set forth in the parties’ briefs.” And with that caveat, the trial court went on to recount the law that it reviewed, including its observations that in securities litigation in federal court, the fraud on the market theory has sometimes been used , to help establish requirements-of Federal Rule of Civil Procedure Rule 23(B)(3), the federal law equivalent of La. C.C.P. art. 591(B)(3). Other than making this observation, the trial court made no further mention of the theory. Instead, in- discussing the commonality element needed for class certification, the trial court stated -the following: As I appreciate this case as it stands at this point, without discovery into or the presentation of evidence on the merits, the common contentions of the putative class members are that'one, if I, plaintiff had known that Stanford was running a Ponzi scheme[11] and that the CD’s had no value, I would not have purchased or renewed those CD’s; and two, SEI and OFI you had a duty to independently determine the value of those CD’s, or at least force Stanford to come forth with some reliable evidence of their value, and had you done so, you would have known it was. a Ponzi .scheme and you would at that time have a duty to tell me about it.... Again, these are just contentions at this point. I am not making any ruling that these facts exist or will be proven at some later date. But if those contentions are true, all class members have a viable claim, and upon proof of causation and damages they would win. If those contentions are false; that is, the defendants had no such duty, all class members lose. The common nucleus of facts to prove causation may be: one, no one would invest in or keep investing in a Ponzi scheme if they knew that’s what it was; and two, they suffered damages because they did invest or continued to invest in that Ponzi scheme. As you can tell, I |iawent to what I saw as the most serious and in my mind, the most relevant issue for consideration, and that is the commonality requirement under Article 591(A)(2) and 591(B)(3) first. As you can tell by the questions that occurred to me as I read these cases and the answers that occurred to me, I feel that plaintiffs have met the commonality requirement for class certification. Thus, as the foregoing illustrates, the trial court clearly did not rely on the “fraud on the market” theory as grounds for certifying the class action. Hence, we reject the OFI’s arguments asserting error on this basis. In the next issue raised by the OFI, it contends that the trial court erred in determining the second requirement under La. C.C.P. art. 591(A)(2)—that there are questions of law or fact common to the class, is met. In its reasons for judgment, the common question as to the OFI found by the trial court was whether the agency had “a duty to independently determine the value of those CD’s, or at least force Stanford to come forth with some reliable evidence of [the CDs’] value, and had [the OFI] done so, [it] would have known [that the CDs were] a Ponzi scheme and [it] would at that time have a duty to tell [the plaintiffs] about it.” The facts that the trial court found to be common to each plaintiff are that each plaintiff unintentionally invested in a Ponzi scheme and lost money or suffered other damage[12] as a result and that all of the plaintiffs purchased the SIB CDs in Louisiana, where the OFI allegedly had regulatory or oversight authority. The OFI, on the other hand, argues that there is a lack of commonality as to the representations made to each plaintiff to cause him or her to either invest directly in the SIB CDs held by Stanford Trust or to place their IRA accounts with Stanford Trust, whereby the IRA funds were converted to SIB CDs. 1iaThe mere existence of common questions will not satisfy the commonality requirement, as it has been recognized that “any competently crafted class complaint literally raises common questions.” Price, 11-0853 at p. 10, 79 So.3d at 969 (quoting Wal-Mart Stores, Inc., v. Dukes, 564 U.S. 338, 349, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011)). Commonality requires a party seeking class certification to demonstrate that the class members’ claims depend on a common contention, and that common contention must be one capable of class-wide resolution, such that “determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.” Price, 11-0853 at p. 10, 79 So.3d at 969 (quoting Wal-Mart Stores, Inc., 564 U.S. at 350, 131 S.Ct. at 2551). In considering commonality, we recognize that only the trial court’s certification as to the OFI is at issue. Stanford Trust was voluntarily dismissed from the litigation, and the claims against SEI have been effectively separated from the claims against the OFI and are being separately litigated. At the certification hearing, the following plaintiffs presented testimony representative of the claims of the proposed class: ■Deborah W. Dougherty testified that her husband, Kenny, retired from Exxon after working for the company for 36 years. She stated that like many of Kenny’s co-workers, they rolled over Kenny’s Exxon retirement[13] into Stanford Trust and purchased three CDs for a little over $500,000. Prior to the shutdown of SIB and related entities in February 2009, Deborah testified that they had sold their CDs, but the money was being held by Stanford Trust to be diversified. The funds were then “frozen” from February to November 2009, as a result of the receivership proceedings initiated by the SEC against SIB and related entities. | uAIthough iri November 2009, the Doughertys received the money being held by Stanford Trust after the United States Fifth Circuit Court of Appeals ordered that the funds be “unfrozen,” Deborah testified that in August 2009, they were sued by the SEC for the funds they received and the interest on the CDs that they had been living on since 2005. Deborah acknowledged that at the time of the hearing, the extent of their damages were related to emotional distress and the loss of interest on their funds during the time the funds were frozen. Kathleen Ann Sonnier Mier testified that when her husband, Louis Mier, Jr., retired from Georgia-Pacific at age 73, the couple rolled Louis’s 401k into a SIB CD. Later, when Kathleen retired, she rolled her retirement from the Teacher’s Retirement System into a SIB CD as well. Kathleen testified that they did not receive interest on the CDs nor did they redeem the CDs, resulting in a loss of about half their retirement; Leah S. Farr testified that she retired from Plantation Pipeline, an Exxon company, in 2001, and acquired two SIB CDs using her IRA account. Then, in 2004, Leah testified that she exchanged the original CDs for two new CDs. She stated that her account was set up such , that interest payments on the CDs were reinvested in the CDs to increase the CDs’ value. Thus, her damages were the loss of the principal ■ and'interest relative to the-CDs. At the time of the certification hearing, Kendall Forbes was a resident of Florida, having moved from Louisiana in October 2009. Kendall was 56 years old at the time of the hearing and was employed with Guardian Pharmacy. He stated that he and his wife owned a total of 9 CDs. During the course of their ownership of the CDs, Kendall testified that they did not reinvest the interest, but instead received the interest payments. He also testified that although they did not redeem any of the CDs, they sometimes took some of the principal from CDs when they matured. lisWilliam Bruce Johnson was 78 years old at the time of the hearing and was employed part-time as a commercial real estate agent. Johnson testified that he founded a chemical company in 1984, which he later sold in 1998. After he sold the company, Mr. Johnson testified that he set up five trusts for his children and grandchildren with Stanford Trust, which in turn, invested the funds from four of the trusts into approximately eight SIB CDs. Seventy-nine-year-old retired physician Terence Beven testified that he invested approximately $7,300,000 in SIB CDs and IRAs .with Stanford Trust. He also acknowledged receiving a refund of $657,000 from the IRS for losses he sustained relative to those investments. While the testimony of the plaintiffs who testified at the certification' hearing varied as to how they came to invest in the SIB CDs (some testified that that they did so as a result of'following their financial advisors to Stanford Trust, while others' testified that it was either through the marketing of a financial advisor or being directed to a Stanford Trust advisor that they were led to invest in the CDs), they all testified that they had no knowledge of the true value of the CDs or the riskiness of the investment. And according to Deborah Dougherty,' even when she and her husband decided to sell their CDs in'2009, they did so because of the general financial crisis of 2008, “when everything started crashing,” and not because it had been disclosed or they had been informed of the true value of the SIB CDs. Thus, although the evidence shows that' there were differences in the manner in which the various plaintiffs came to invest in the SIB CDs, we fail to see how these ‘ differences change the fact common to all the plaintiffs—that they invested in the CDs under a false understanding of the value and safety of the investment. And while the OFI did not directly make any representations to the plaintiffs as to the value or risk of the SIB CDs, the question that remains and that is yet to be | ^determined is whether any communication by the OFI of its concerns' regarding the risk and value of the ,CDs, pursuant to its regulatory authority, would have come to the knowledge of the plaintiffs or otherwise impacted the representations made to the plaintiffs. As such, we find no error in the trial court’s finding that the answer to the question of whether the OFI had a duty to disclose the riskiness of the CDs or to prohibit the sale of the CDs is equally common,, to all the proposed plaintiffs, such that in one stroke, it' could determine' the liability of the OFI as to all of the plaintiffs. See Price, 11-0853 at p. 10, 79 So.3d' at 969. Accordingly, we find no error in the trial court’s determination of commonality. The OFI next contends that the trial court erred in finding that the plaintiffs sufficiently'established that the “class is so numerous that joinder of all members is impracticable,” under La. C.C.P. art. 591(A)(1). Although referred to as the “nu-merosity” requirement, it is important to note that this prerequisite is not based on the number of ..class members alone. The requirement of numerosity is followed, by, and must be considered with, the core condition of this requirement—that joinder be impracticable. Doe v. Southern Gyms, LLC, 12-1566, p. 10 (La. 3/19/13), 112, So.3d 822, 830. There is no strict numerosity threshold. In other words, there is no set number above which ;a class is considered to have satisfied this requirement. Doe, 12-1566 at p. 11, 112 So.3d at 831 Factors that have, been considered for determining whether the proposed class has a sufficient number of members so that joinder is impracticable include: (1) the geographic dispersion of the class; (2) the ease with which , class members may be identified; (3) the nature of the action; (4) the size of the*individual claims;' (5) judicial economy in avoiding a multiplicity of lawsuits; and (6) financial resources of class members. Doe, 12-1566 at p. 12, 112 So.3d at 831-32. In contesting the trial court’s determination that the plaintiffs met their burden of establishing the numerosity element, the OFI contends that the trial court 117erred in simply accepting the following evidence submitted by the plaintiffs as proof of the numerosity element: (1) four different charts listing information regarding the named plaintiffs; (2) a table listing the number, of trust accounts and SIB CD accounts held by Stanford Trust as of September 30, 2008, broken down by state or country; and (3) a table listing persons at Stanford Trust who had IRA accounts that invested in SIB CDs as of the end 2006, 2007, and 2008. Other than the. charts regarding the named plaintiffs,' the other evidence does not identify whether the persons listed purchased or renewed any SIB CDs between January 1, 2007 and February 13, 2009. As such, the OFI argues that “these documents are at best conflicting as to the proposed number of claimants that, may fall within the class definition, and do not support a finding of numerosity or describe an objectively definable class.”, The party seeking class certification does- not have to identify each class member at the certification hearing, but' an aspect of presenting evidence of a defined group of aggrieved persons includes the fact that those-persons are identifiable in someway. Doe, 12-1666 at p. 17, 112 So.3d at 835 (emphasis in the original). The evidence presented by the plaintiffs identifies the accounts of over one thousand individuals living in thirty-five different states.[14] Other than for the named plaintiffs, the evidence does not identify whether the SIB CDs associated with the accounts were purchased or renewed between January 1, 2007 and February 13, 2009. From the record before us, it appears that the information regarding date of purchase and/or date of renewal of the SIB CDs owned by the named plaintiffs was garnered from those plaintiffs directly. Although the evidence presented by the plaintiffs does not identify a date of purchase or renewal for a majority of the individuals identified, we. cannot say the |istrial court was clearly wrong in finding this evidence sufficient to establish the numerosity element. Tbe evidence shows that SIB CD accounts were owned by the identified individuals during the relevant time period and therefore they have the potential to be class members. Further, the geographic locations of the account holders are widely scattered, covering mul--tiple states and even a couple of foreign territories. This widespread dispersal pf potential class members understandably would have an effect on gathering more specific information regarding individual ownership, renewal, and losses associated with the SIB CDs owned by the identified, account holders. And the nature of the claims, premised on securities fraud, wherein it is alleged that a large number of the potential class rhembers are retirees and/or persons who lost life or retirement savings, suggests some effect on the financial resources of potential class members to pursue any potential claims. As such, we find no merit in the OFI’s assertion that the plaintiffs’ evidence was insufficient to establish numerosity. Finally, in the last issue raised, the' OFI argues that the trial court erred in'finding that questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the' fair and efficient adjudication of the controversy, pursuant to La. C.C.P. art. 591(B)(3). In support of its argument, the OFI points out that there are several other Stanford-related lawsuits pending ¿gainst other defendants, that the plaintiffs’ damage claims are not uniform (with some claiming just lost principal, some lost principal and interest, some just lost interest, and some claiming emotional distress damages), and that most of the plaintiffs will pursue their claims against the OFI regardless of class certification due to the extent of their losses. Initially, we observe that the proposed class is limited to the questions of whether the OFI had a duty to disclose suspected risks and concerns regarding the 11ssoundness of the CDs and whether such disclosure would have impacted the identified investors’ decision to have acquired or renewed SIB CDs between January 1, 2007 and February 13, 2009. Additionally, as the OFI has asserted its Eleventh Amendment Immunity to preclude suit against it in any other forum but Louisiana state court, it is clear that the other litigation identified by the OFI cannot be a means by which any of the plaintiffs could seek relief from the OFI for its alleged negligence. Moreover, as previously noted, varying degrees of damages or the fact that class members must individually prove their right to recover are not grounds for denying class certification. See Dupree v. Lafayette Insurance Company, 09-2602, p. 10 (La. 11/30/10), 51 So.3d 673, 682. And finally, while it is true that in the other litigation identified by the OFI, some of the plaintiffs stated that they were individually litigating their claims in the other litigation either pursuant to a contingency fee or an hourly fee agreement with counsel, such information does not necessarily indicate that other plaintiffs would have the same means and ability to likewise litigate their claims against the OFI. Deborah Doughery testified that she did not have the resources to continue the instant lawsuit on her own and would not if it was only her lawsuit. Kathleen Mier similarly testified that she did. not have the financial resources to pursue the claims on her own. As such, we reject the arguments raised by the OFI to refute the trial court’s finding that the plaintiffs met their burden of establishing the superiority of the class action procedure and the predominance of the issues common to-the class pursuant to La. C.CJP. art. 591(B)(3). Likewise, we find no error in the trial court declining to extend membership in the class to persons who “made a decision not to redeem [SIB CDs] prior to maturity based upon express representations made by the Trust, their agents, or the Stanford Financial Group or based upon the values stated by SEI between January 1, 2007 and February 13, 2009.” We believe the trial court was correct in | ^observing that the decision not to redeem the CDs prior to maturity clearly would involve additional, more individualized considerations, such as whether the individual could afford or would be willing to incur any penalty or loss that would result from early redemption, even if there had been disclosure regarding the true value and risk the SIB CDs presented. Thus, we agree with the trial court that extending membership to such persons would require individualized proof, such that the commonality and predominance requirements of class certification would not be met. Therefore, we deny the plaintiffs’ answer to the appeal. CONCLUSION Having thoroughly considered the issues ánd arguments raised in this class certification matter, we find no abuse of the trial court’s discretion in certifying a class action and affirm. Accordingly, we deny the plaintiffs’ answer to the appeal and affirm the class certification judgment. All costs of this appeal, in the amount of $13,049.00, are cast to the State of Louisiana, Office of Financial Institutions. AFFIRMED; ANSWER TO THE APPEAL DENIED. . The other named defendants in that action were the Stanford Group Company, Stanford Capital Management, James M,' Davis, and Laura Pendergest-Holt. , See Securities and Exchange Commission v. Stanford International Bank, LTD., Stanford Group Company, Stanford Capital Management, LLC, R. Allen Stanford, James M. Davis, and Laura Pendergest-Holt, 3:09-cv-0298-N (ND Tx). .A certifícate of deposit, "CD,” is a- bank document showing the .existence of a time deposit that usually pays interest. See Black's Law Dictionary 204 (Bryan A. Garner ed., 9th ed., West 2010). . The plaintiffs later amended their petition to add SEI Private Trust Company as an additional defendant. Both companies will be referred to collectively herein as simply "SEI.” . Plaintiffs also asserted claims of 'misrepresentation, breach of contract, and breach of fiduciary duty against Stanford Trust. . Deborah Dougherty, the wife of one of the named plaintiffs, also testified on behalf of the plaintiffs at the hearing, and SEI introduced her deposition into evidence. . Pursuant to an ex parte motion filed by SEI, the trial court signed an amended judgment to correct the spelling of SEI Investment Company to SEI Investments Company. . The OFI additionally moved to appeal a second judgment signed by the trial court on January 2, 2013, that is identical to the December 17, 2012 judgment. .The three additional plaintiffs named were James Roland, Susan Roland, and Michael J. Giambrone. The seven insurance companies named as defendants were Continental Casualty Company, Certain Underwriters at Lloyd’s of London, Indian Harbor Insurance Company, Nutmeg Insurance Company, Allied World Assurance Company (U.S.) Inc., Arch Insurance Company, and Endurance Specialty Insurance Ltd. . As explained in Halliburton Co. v. Erica P. John Fund. Inc., — U.S. -, 134 S.Ct. 2398, 2405, 189 L.Ed.2d 339 (2014), the "fraud on the market” theory is derived from Basic Inc. v. Levinson, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988), wherein the United States Supreme Court held that investors ' in private securities fraud cases could invoke the presumption that the price of stock traded in an efficient market reflects all public, material information, including material misstatements, to establish that they relied, on a defendant's misrepresentation in deciding to buy or sell a company's stock. . A Ponzi scheme is: A fraudulent investment scheme in which money contributed by later investors generates artificially high dividends or returns for the original investors, whose example attracts even larger investments. Money from the new investors is used directly to repay or pay interest to earlier investors, [usually] without, any operation or revenue-producing activity other than the continual raising of new funds. This scheme takes its name from Charles Ponzi, who in the late 1920s was convicted for fraudulent schemes he conducted in Boston. Black’s Law Dictionary, supra note 3, at 1004; see also Cunningham v. Brown, 265 U.S. 1, 7-9, 44 S.Ct. 424, 425-26, 68 L.Ed. 873 (1924). . In Dupree v. Lafayette Insurance Company, 09-2602, p. 10 (La. 11/30/10), 51 So.3d 673, 682 (quoting Bartlett v. Browning-Ferris Industries Chemical Services, Inc., 99-0494, p. 3 (La. 11/12/99), 759 So.2d 755, 756), the Louisiana Supreme Court held that the provisions of La. C.C.P. art. 591(C) recognize that "the mere fact that varying degrees of damages may result from the same factual transaction and same legal relationship or that class members must individually prove their right to recover does not preclude class certification.” . Deborah stated that she is the named beneficiary of her husband’s account with Stanford Trust. . The evidence also shows that there was an account in the Virgin Islands and in Antigua.