# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-30431
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

February 22, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

BRIAN MANUEL GARCIA,

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:16-CR-209-1

Before REAVLEY, PRADO, and GRAVES, Circuit Judges.

PER CURIAM:[*]

A jury convicted Brian Manuel Garcia of one count of conspiring to possess intending to distribute 50 grams or more of methamphetamine and 500 grams or more of a mixture containing methamphetamine and one count of possessing intending to distribute 50 grams or more of methamphetamine and 500 grams or more of a mixture containing methamphetamine. He now appeals the district court's denial of a continuance, arguing that evidence

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

disclosed to the defense for the first time on the day of trial could have been used to impeach a witness and was exculpatory such that the court's denial of additional time to explore it constituted a violation of his rights under *Brady v. Maryland*, 373 U.S. 83 (1963).

We review for abuse of discretion the denial of a continuance, and to prevail, Garcia must show that, under the totality of circumstances, he suffered "serious prejudice." *United States v. Stanford*, 805 F.3d 557, 567 (5th Cir. 2015). We review de novo the district court's *Brady* ruling. *United States v. Runyan*, 290 F.3d 223, 246 (5th Cir. 2002).

The Government's primary witness against Garcia was Alberto Trevino, Garcia's codefendant, who told the jury that Garcia recruited him to accompany Garcia in transporting methamphetamine from Texas to Mississippi in Trevino's car. Garcia testified in his own defense, representing that he believed he was accompanying Trevino to find work installing insulation on boats in the Mississippi River and that he had no knowledge that there was methamphetamine in the car. On the first day of trial, defense counsel learned that a witness had testified before the grand jury that Trevino's six-year-old son, who had accompanied Garcia and Trevino on the drug delivery trip, had made an unprompted statement that his "father delivers lots of boxes. He brings back lots of money. He gets more boxes and brings back even more money."

The prosecution runs afoul of *Brady* if it suppresses or withholds evidence that is favorable to the defense—either because it is exculpatory or it has impeachment value—and is material to the defendant's guilt or punishment. *Brady*, 373 U.S. at 87; *see United States v. Bagley*, 473 U.S. 667, 676 (1985). Even if we assume that the boy's statement, which was disclosed

before trial began, was suppressed, Garcia has not established that the evidence was material.

Trevino's son's statement that his father delivered boxes and returned with money could suggest that Trevino was more heavily involved in the drug trade than he acknowledged at trial. However, Trevino admitted that he had a prior drug distribution conviction, that he sold drugs in the past and had sold drugs in the previous year to Garcia, that he readily participated in the delivery in this case, and that he had pleaded guilty to participating in the drug conspiracy. The evidence showed that Trevino was experienced in the drug trade, and, thus, additional evidence suggesting that Trevino was involved in selling or delivering drugs would not have affected the verdict. *See Runyon*, 290 F.3d at 247; *see also Spence v. Johnson,* 80 F.3d 989, 995 (5th Cir. 1996) ("[W]hen the undisclosed evidence is merely cumulative of other evidence, no *Brady* violation occurs."). Moreover, Trevino was extensively impeached. He admitted that he had a substantial criminal history, untreated mental illnesses, and a motive to testify against Garcia in an effort to avoid a life sentence, and he acknowledged arguing with and trying to attack Garcia while they were incarcerated in the same facility. In this context, the vague statements from Trevino's young son would have had only incremental impeachment value. *See Miller v. Dretke*, 431 F.3d 241, 251 (5th Cir. 2005) (explaining that evidence that provides only incremental impeachment value does not rise to the level of *Brady* materiality).

As for the assertion that the boy's statement tended to exculpate Garcia, the general statement that Trevino delivered boxes and returned with money did not directly relate to the drug delivery at issue here. Trevino's potential involvement in other drug transactions does not mean that Garcia was not involved in this one, and an insinuation that Trevino delivered drugs in the

No. 17-30431

past does not undercut his testimony that he agreed to deliver drugs for Garcia. Finally, this case turned on more than simply the testimony of Trevino. Text messages from Trevino's and Garcia's phones supported Trevino's version of events as did testimony from a police officer regarding Garcia's demeanor and statements before and after his arrest.

Garcia has not shown that the boy's remark "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict" and thus has not established a reasonable probability that the outcome of the trial would have been different had he known about the boy's statement sooner. *Kyles v. Whitley*, 514 U.S. 419, 435 (1995). He also has not established that he suffered serious prejudice from the court's denial of a continuance. *See Stanford*, 805 F.3d at 567.

Accordingly, the judgement is AFFIRMED.